# Illinois Official Reports

## Appellate Court

*People v. Avila*, 2014 IL App (2d) 121311

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUIS I. AVILA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1311 |
| Filed | December 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The sentences imposed on defendant following his guilty plea to home invasion and aggravated unlawful use of a dangerous weapon other than a firearm were upheld over his contention that the extended term imposed for the aggravated unlawful use of a dangerous weapon other than a firearm was void because it was imposed on the less serious of defendant's offenses since, in defendant's case, the amendment of the original charge of home invasion committed while armed with a firearm was amended for purposes of the plea agreement to charge home invasion while armed with a dangerous weapon other than a firearm, thereby supporting the factual basis presented for defendant's plea and allowing a determination that defendant's two offenses arose from unrelated courses of conduct and rendering the imposition of the extended term on the conviction for aggravated unlawful use of a firearm valid, even though it was the less serious of defendant's two convictions. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 11-CF-1400; the Hon. Rosemary Collins, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph B. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Schostok and Justice Burke concurred in the judgment and opinion.


## OPINION

¶ 1        On appeal, defendant, Luis I. Avila, challenges his sentence, imposed upon a plea of guilty, for home invasion (720 ILCS 5/12-11(a)(1) (West 2010) (possession of a dangerous weapon other than a firearm)) and aggravated unlawful use of a firearm (AUUF) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2010) (failure to possess a currently valid firearm owner's identification card)). He contends that (1) his extended-term sentence on the AUUF conviction is void because it is on the less serious of his two convictions; and (2) his sentence for home invasion is excessive under the facts. We reject both contentions and affirm.

¶ 2                                    I. BACKGROUND

¶ 3        In June 2011, the State brought a five-count indictment against defendant. Counts I and II alleged that defendant committed home invasion while armed with a firearm (720 ILCS 5/12-11(a)(3) (West 2010)), count III charged unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(1) (West 2010)), and counts IV and V charged AUUF (respectively, 720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010) ("firearm possessed was uncased, loaded and immediately accessible at the time of the offense") and 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2010) (failure to possess a currently valid firearm owner's identification card)). Both home invasion counts alleged that defendant entered the dwelling place of Paulette Mattson while armed with a firearm and threatened her with the imminent use of force.

¶ 4        In each of the five counts the State alleged a basis for an extended-term sentence: on count I because Mattson was over 60 years of age at the time of the offense (730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2010)); and on counts II through V because the firearm defendant wielded was equipped with a laser sight (730 ILCS 5/5-5-3.2(b)(6) (West 2010)).

¶ 5        On June 1, 2012, the trial court and the parties held an unrecorded conference under Illinois Supreme Court Rule 402 (eff. July 7, 1997). On July 2, 2012, the State amended count I, deleting the reference to "firearm" and alleging instead that defendant possessed "a dangerous weapon, *** a bludgeon." The State accordingly amended the statutory reference (see 720

- 2 -

ILCS 5/12-11(a)(1) (West 2010) (possession of a dangerous weapon other than a firearm)). In court that day, defense counsel announced that, "based on th[e] amendment" to count I, his client would plead guilty to counts I and V, and the remaining counts would be dismissed. The trial court commented that the amendment to count I eliminated "the additional enhancement language," namely, the mandatory 15-year add-on term for home invasion while armed with a firearm (720 ILCS 5/12-11(c) (West 2010)). After a question arose regarding the sentence credit available on count I, the parties agreed to continue the matter "for a plea."

¶ 6 At the next court date, defense counsel asked for a continuance while the parties explored the possibility of a "fully negotiated plea." Three days later, the parties presented a plea agreement with the following terms:

> "Count 1 *** has already been amended. [Defendant] would plead guilty to Count 1 and also to Count 5 ***, and we would ask to have this matter set for a sentencing hearing. There's no cap, no agreement."

¶ 7 In a colloquy with the court, defendant acknowledged that he was entering an "open plea" as there was no agreement on sentencing. The court admonished defendant that home invasion, a Class X felony, was normally punishable by a prison term of 6 to 30 years, but that defendant was eligible for an extended term of 30 to 60 years (730 ILCS 5/5-4.5-25(a) (West 2010)) because Mattson was over 60 years old when the offense occurred (730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2010)). Likewise, for AUUF, which was a Class 4 felony normally punishable by a prison term of one to three years, defendant was eligible for an extended term of three to six years because the firearm he carried was equipped with a laser sight (730 ILCS 5/5-5-3.2(b)(6) (West 2010)).

¶ 8 The State then presented the following factual basis for the plea:

> "On May 25th of 2011 at approximately 1:22 a.m., Deputy Ganz *** was dispatched to a home invasion in progress at 231 Atwood Avenue in Rockford. Dispatch advised that the victim had an open line with 911 and that the suspects were in the home and could be heard talking and asking where the money was.
>
> Upon his arrival, Deputy Ganz observed a suspect wearing a black bandana over the lower half of his face step out of the entryway on the south side of the residence[,] and Ganz ordered the suspect to the ground. Ganz reported that the suspect looked at him, turned back into the residence[,] and shut the door. Deputy Ganz reported that he heard what sounded like glass breaking and heard another deputy yelling for [the] suspects to get on the ground on the north side of the house.
>
> Deputy Ganz reported that he ran to that location and observed another suspect, later identified as the defendant, Luis Avila, running east from the residence. Deputy Ganz reported [that] he chased the defendant, who was running with his hands concealed in front of him. *** [Defendant] turned south in the yards of 300 Garver and fell forward. Deputy Ganz then took the defendant into custody.
>
> The victim, Paulette Mattson, reported that she had been in her kitchen when she heard someone shaking the front door. Mattson reported that she ran to her bedroom, shut the door[,] and called 911. Mattson reported that she was on the floor when three suspects came into her bedroom and one pointed a bludgeon at her and asked her 'Where are the drugs, ma'am?' Mattson said she told the males that they had the wrong house and gave them her purse.

- 3 -

Deputy Ganz conducted a show-up with Mattson and she positively identified the defendant as one of the suspects who was yelling at her in her house and had a bludgeon in his hand and was pointing it at her.

Detectives later conducted a search of the area where the defendant was located and *** located a loaded 9 millimeter Ruger P89 handgun with a laser sight attached in the backyard of 305 Garver Avenue approximately 20 feet away from where [defendant] had fallen.

Paulette Mattson's date of birth is October 21st of 1943, making her 67 years old at the time of the offense.

The defendant does not possess a currently valid firearm owner's identification card."

¶ 9   The court accepted the plea to counts I and V, ordered a presentence investigation report, and set the matter for sentencing.

¶ 10   At sentencing, the State called in aggravation Mattson and the police officers who responded to her 911 call on May 25, 2011. These witnesses presented the following account of the offense and its surrounding circumstances. Around 1 a.m. on May 25, Mattson was in her home in Rockford. She was 67 years old and lived alone. Mattson was in her kitchen taking medication when she heard the noise of a loud vehicle approaching. She looked out her front window and saw a truck parked across the street. When she turned off the kitchen lights to see outside better, she observed a face in the window. Startled, Mattson hurriedly tried to call the police. As she dialed 911, she saw three men at her front door. With her phone in one hand, Mattson tried to secure the door with a step stool. She heard the door handle rattle and then a brick came through the door. Mattson ran to her bedroom and tried to shut the door. A man pursued her and pushed against the bedroom door, and Mattson was knocked down. Mattson slid her phone under the bed, and the 911 operator was able to hear what transpired inside her bedroom. The man entered the room, flashed a laser into Mattson's eyes, and threatened to kick her in the face if she did not give him "some 'stash.' " The man threatened twice more to kick Mattson in the face. At the third threat, Mattson activated her "Life Line" device, which transmitted to paramedics that she had a medical emergency. Another man entered the room and told Mattson to get on the bed. Mattson heard a man yell from the living room that the police had arrived. The two men then fled from the bedroom.

¶ 11   When the police arrived at Mattson's home, they saw a suspect flee on foot. The police pursued and apprehended the suspect in a nearby yard. The man identified himself as Luis Avila. The police conducted a show-up of defendant with Mattson, and she identified him as the man who had shined a laser in her eyes and threatened to kick her. The police searched the surrounding area and found, approximately 20 feet from where defendant was apprehended, a loaded 9-millimeter handgun with a laser sight.

¶ 12   The defense presented several witnesses in mitigation. The first was Anita Casazza-Bolton, who worked for La Voz Latina, a social services agency. She testified that defendant sought guidance from the agency on debt reduction and improving his job prospects. Defendant told Casazza-Bolton that he wanted to obtain his GED, complete the "Job Corp." program, and eventually become a security guard or police officer. Defendant had some custody or visitation issues with his daughter and believed that it was important to spend time with her. Casazza-Bolton noted that defendant voluntarily enrolled in parenting classes with the

Department of Children and Family Services. She remembered defendant as "a very loving individual," and she "honestly believe[d] he could still be rehabilitated."

¶ 13 Also testifying was Crystal Salgado, the mother of defendant's five-year-old daughter, Jaylene. Salgado said that defendant had a loving relationship with Jaylene. Defendant had voluntarily given Salgado and Jaylene financial support, and his absence since his arrest had been a hardship for them.

¶ 14 The final witness in mitigation was Irma Ortiz, defendant's mother. Ortiz testified that, as a child, defendant was well behaved, hardworking, and conscientious. Ortiz described defendant as a "good person" who deserved a second chance.

¶ 15 Defendant spoke in allocution. He acknowledged that he "made a serious mistake" and apologized to Mattson. Defendant was willing "to accept responsibility" for his mistake.

¶ 16 The State recommended a 40-year extended-term sentence on count I, the home invasion conviction, and a concurrent 6-year extended-term sentence on count V, the AUUF conviction. The court sentenced defendant to a 28-year nonextended term on the home invasion conviction, which the court later reduced to 26 years. The court sentenced defendant to a concurrent six-year extended term on the AUUF conviction.

¶ 17 Defendant appeals.

¶ 18 II. ANALYSIS

¶ 19 Defendant's two contentions on appeal are directed at his sentence. First, he asserts that, because his AUUF conviction was the less serious of his two convictions, the trial court had no authority to impose an extended-term sentence for that conviction. We disagree.

¶ 20 As defendant's convictions were entered upon a guilty plea, we look to the factual basis for the plea to determine if defendant's sentence was lawful. *People v. White*, 2011 IL 109616, ¶ 17. Generally, "when a defendant has been convicted of multiple offenses of differing classes, an extended-term sentence may only be imposed for the conviction within the most serious class." *People v. Jordan*, 103 Ill. 2d 192, 206 (2006) (citing Ill. Rev. Stat. 1979, ch. 39, ¶ 1005-8-2(a) (now 730 ILCS 5/5-8-2(a) (West 2010))). Only when there are "separately charged, differing class offenses that arise from unrelated courses of conduct" will a trial court have discretion to impose an extended-term sentence for the conviction that is not within the most serious class. *People v. Coleman*, 166 Ill. 2d 247, 257 (1995). The *Jordan/Coleman* rule has an interesting application. A good example is a case like the present, where there are two convictions within different offense classes and each carries a potential extended term. As one might expect, the trial court could not properly impose extended terms on both convictions unless the offenses arose from unrelated courses of conduct. What one might *not* expect, however, is that, if the court wished to impose just one extended term, it could do so only on the greater offense, except where the offenses arose from unrelated courses of conduct, in which case an extended term could be imposed on either one or both convictions. See *People v. Bell*, 196 Ill. 2d 343, 355 (2001) (where the defendant was convicted of armed robbery and aggravated battery, and the trial court imposed an extended-term sentence for the battery (the less serious offense) alone, the extended term was void because the offenses were part of a single course of conduct).

¶ 21 Under the *Jordan/Coleman* rule, the extended-term sentence on the less serious offense, AUUF, was lawful only if the two offenses were part of unrelated courses of conduct. The

supreme court in *Bell*, asked to decide on a test for when offenses arise from unrelated courses of conduct, borrowed from the then-governing statutory criteria for the imposition of consecutive sentences:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective ***." 730 ILCS 5/5-8-4(a) (West 1998) (amended by Pub. Act 93-160, § 5 (eff. July 10, 2003)).

¶ 22    The *Bell* court applied the test as follows to extended-term sentencing:

> "[I]n determining whether a defendant's multiple offenses are part of an 'unrelated course of conduct' for purposes of his eligibility for an extended-term sentence under section 5-8-2(a) [of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (West 1998))], courts must consider whether there was a substantial change in the nature of the defendant's criminal objective. If there was a substantial change in the nature of the criminal objective, the defendant's offenses are part of an 'unrelated course of conduct' and an extended-term sentence may be imposed on differing class offenses. If, however, there was no substantial change in the nature of the criminal objective, the defendant's offenses are not part of an unrelated course of conduct, and an extended-term sentence may be imposed only on those offenses within the most serious class." *Bell*, 196 Ill. 2d at 354-55.

¶ 23    We hold that the *Bell* test was met here. The original count I alleged that defendant committed the home invasion while armed with a firearm. Count V charged defendant with possession of a firearm equipped with a laser scope. However, as amended pursuant to the plea agreement, count I alleged that defendant possessed a dangerous weapon *other than* a firearm. The intent behind the plea agreement was for defendant to plead guilty in exchange for the State's amending count I to eliminate defendant's exposure to the mandatory 15-year add-on for possession of a firearm in the course of the home invasion. See 720 ILCS 5/12-11(c) (West 2010). The State amended count I for no purpose other than to secure defendant's plea. Thus, what the parties submitted to the court was the *fiction* that defendant was not armed with a firearm when he committed the home invasion. The parties had the prerogative to agree on that fiction for purposes of the plea and sentence, and our concern on review is whether the sentence was lawful in relation to the factual basis presented. See *White*, 2011 IL 109616, ¶ 27 (recognizing principle embraced by the appellate courts that the State can "concede a version of the facts which would fail to acknowledge that a firearm was used in the commission of the offense and make sentencing concessions based on that set of facts," but finding the principle "not relevant" in the case before it because "[t]he version of the facts agreed to by the State and presented by it in the factual basis to the court established that a firearm was used in the commission of the offense"); *id.* ¶¶ 37, 41 (Theis, J., specially concurring) (finding it "implicit" in the majority's opinion that "[i]f the State wished to negotiate around the mandatory sentence enhancement ***, it should have *** amend[ed] the indictment and present[ed] a factual basis that referred to a dangerous weapon, rather than a firearm"); *People v. Hubbard*, 2012 IL App (2d) 120060, ¶ 21 (construing *White* to hold that the agreed facts presented to support a guilty plea "determine the validity of the sentence").

¶ 24    The factual basis for the guilty plea stated that, during the home invasion, defendant was armed with a "bludgeon," which–as charged in the amended count I–was not a firearm. The home invasion was complete when defendant, having entered Mattson's home without

authority and knowing that she was home, threatened to harm her. See 720 ILCS 5/12-11(a)(1) (West 2010). The factual basis further stated that, when defendant was apprehended outside the home, a handgun was found in his vicinity. These latter facts were the proffered basis for the AUUF conviction entered on count V. The factual basis did not state that defendant possessed the handgun while inside Mattson's home. The omission was no accident. The parties, who agreed to eliminate defendant's exposure to the mandatory 15-year add-on for possession of a firearm in the course of a home invasion (see 720 ILCS 5/12-11(c) (West 2010)), deliberately crafted and presented to the trial court a factual basis that made no mention that defendant possessed a firearm within Mattson's home. Defendant alleges no ineffectiveness of trial counsel in negotiating his plea. He is bound by the factual basis to which he agreed in order to avoid the mandatory 15-year add-on. Not only was there no express mention in the factual basis that defendant possessed a firearm while inside the home, it was also not necessarily implied. There are plausible scenarios by which defendant might have come into possession of the handgun after he left the home (and completed the home invasion) and that would have demonstrated a substantial change from the criminal objective that defendant had in committing the home invasion. Perhaps, for instance, one of the other suspects passed the handgun to defendant for his disposal as he fled the home.

¶ 25    We hold, therefore, that the factual basis for the guilty plea supports the trial court's implicit determination that the offenses of AUUF and home invasion arose from unrelated courses of conduct. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 72 (reviewing court "presumes that a trial judge knows and follows the law unless the record affirmatively indicates otherwise"). Consequently, the trial court did not err in sentencing defendant to an extended term on the AUUF conviction.

¶ 26    Defendant's other contention on appeal is that his 26-year sentence for home invasion is excessive. We disagree here as well.

¶ 27    A trial court has broad discretionary powers in fashioning a sentence, and its sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. "The spirit and purpose of the law are promoted when a sentence reflects the seriousness of the crime and gives adequate consideration to a defendant's rehabilitative potential." *People v. Colbert*, 2013 IL App (1st) 112935, ¶ 24.

¶ 28    Defendant contends that, in commenting that the offense was "serious," the trial court was simply considering the inherent seriousness of home invasion. We disagree. The court could not properly consider a factor inherent in the offense, but here the court properly took into account "the nature and circumstances of [the] offense, including the nature and extent of each element of the offense as committed by [defendant]" (*People v. Newlin*, 2014 IL App (5th) 120518, ¶ 22). See *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986) ("A reasoned judgment as to the proper penalty to be imposed must *** be based upon the particular circumstances of each individual case."). Indeed, "[t]he seriousness of the offense is the most important sentencing factor." *People v. Watt*, 2013 IL App (2d) 120183, ¶ 50.

¶ 29    The trial court could properly note that the home invasion in this case was particularly brazen. As the State perceptively comments, "The fact that [d]efendant and his cohorts continued to enter in a riotous manner even when they were aware that they had been spotted also made it more frightening for [Mattson] because it must have seemed they would go to any

length to achieve their goal." Once inside the home, defendant pursued Mattson into her bedroom and, while she lay helpless on the floor, threatened multiple times to kick her in the head.

¶ 30     There were additional aggravating factors. First, Mattson was over 60 years old at the time of the offense. See 730 ILCS 5/5-5-3.2(a)(8) (West 2010). (Notably, the trial court could have used this same factor to impose an extended-term sentence for the home invasion (see 730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2010)), but decided against it.) Second, the event had considerable emotional impact on Mattson. See *People v. Cain*, 221 Ill. App. 3d 574, 575 (1991) ("The psychological harm to the victim may also be considered as an aggravating factor."). Mattson described at sentencing how the event changed her daily routine. She was prescribed an anti-anxiety drug. She sleeps on her sofa with her clothes on and keeps her car keys nearby so that she can use her car alarm to alert neighbors of an emergency. She is unable to fall asleep until 3 or 4 a.m. She has taken extra security measures on her house by barring her door and placing screws in her windows to limit their opening. When she sleeps, she "still hear[s] that crash, *** still see[s] that face, still see[s] the laser." Once, when her grandchildren were playing with a toy laser, she broke down and cried.

¶ 31     There were also mitigating factors for the court to consider. Defendant's prior criminal record consisted only of three traffic violations (a headlamp infraction, a stop sign violation, and a seatbelt infraction). The witnesses in mitigation testified to defendant's good qualities. This evidence in mitigation was noteworthy, but the aggravating factors were substantial. As noted, defendant violently disrupted the domestic security of a senior citizen, pursuing her into her bedroom and threatening multiple times to kick her in the head as she lay helpless on the floor. Mattson testified to the vulnerability and anxiety she felt since the offense. "So long as the trial court does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, it has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense." (Internal quotation marks omitted.) *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 90. We have no reason to doubt that the trial court considered all and only all pertinent sentencing factors. We find no abuse of discretion in the 26-year sentence on the home invasion conviction.

¶ 32                                   III. CONCLUSION

¶ 33     For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

¶ 34     Affirmed.