(No. 89520.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TERRELL W. BELL, JR., Appellant.

*Opinion filed May 24, 2001.*

344

GARMAN, J., took no part.

Daniel D. Yuhas, Deputy Defender, and Robert N. Markfield, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Barney S. Bier, State's Attorney, of Quincy (Joel D. Bertocchi, Solicitor General, and William L. Browers and Michael Hoard, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal, we determine the proper test for ascertaining whether offenses arise from an unrelated course of conduct for purposes of imposing extended-term sentences under section 5—8—2(a) of the Unified Code of Corrections. 730 ILCS 5/5—8—2(a) (West 1998).

## BACKGROUND

Evidence produced at trial established the following facts. On August 20, 1996, defendant and two friends, Ronald Smith and Andre Anderson, visited Chuck and Charlie's Tavern in Quincy, Illinois. Terry Powell, an acquaintance of defendant, was also present at the tavern. When Powell left the tavern, defendant, Smith, and Anderson followed him into an alley and attacked him. The men hit and kicked Powell, and defendant struck him several times with a pool cue stick or a mop handle. At some point during the beating, defendant took money from Powell's trousers. The men then continued to hit and kick Powell. The entire beating lasted approximately 15 minutes.

Defendant was subsequently apprehended and charged with armed robbery (720 ILCS 5/18—2(a) (West

1998)), robbery (720 ILCS 5/18—1(a) (West 1998)) and two counts of aggravated battery (720 ILCS 5/12—4(a), (b)(1) (West 1998)).[1] On January 14, 1998, a jury in the circuit court of Adams County convicted defendant of one count of armed robbery, one count of robbery and two counts of aggravated battery. At defendant's sentencing hearing on February 20, 1998, the State sought a total sentence of 30 to 50 years' imprisonment. Defendant requested leniency, due to his age of 24 years and his rehabilitative potential. The circuit court sentenced defendant to a term of 20 years' imprisonment for the armed robbery conviction. The circuit court also imposed an extended-term sentence of 10 years' imprisonment pursuant to section 5—8—2(a) of the Unified Code of Corrections (730 ILCS 5/5—8—2(a) (West 1998)) for the aggravated battery conviction. The sentences were ordered to run concurrently pursuant to section 5—8—4(a) of the Unified Code of Corrections (730 ILCS 5/5—8—4(a) (West 1998)) because the court found that the armed robbery and aggravated battery were the result of a "single course of conduct."

Defendant appealed. On appeal, defendant argued that: (1) the trial court's sentences were an abuse of discretion in light of defendant's rehabilitative potential; and (2) the trial court erred in imposing an extended-term sentence for defendant's aggravated battery conviction. With respect to his second argument, defendant contended that, because his convictions arose from a single course of conduct, he was eligible to receive an extended-term sentence only on the more serious class offense of armed robbery.

The appellate court held that the trial court did not

---

[1]Defendant was also charged with one count of failure to register a change of address as a child sex offender. 730 ILCS 150/6 (West 1998). However, this charge was later severed upon defendant's motion.

abuse its discretion when sentencing defendant. 313 Ill. App. 3d 280, 283. The appellate court also rejected defendant's argument that he was ineligible to receive an extended-term sentence for the aggravated battery conviction. 313 Ill. App. 3d at 286. The appellate court stated that, according to this court's decision in *People v. Jordan*, 103 Ill. 2d 192 (1984), a defendant convicted of multiple offenses may be sentenced to an extended-term sentence, pursuant to section 5—8—2(a), only on those offenses within the most serious class. 313 Ill. App. 3d at 283. The appellate court further noted, however, that under section 5—8—2(a), extended-term sentences may be imposed on differing class offenses that arise from "unrelated courses of conduct." 313 Ill. App. 3d at 283, citing *People v. Coleman*, 166 Ill. 2d 247, 257 (1995). In this case, the appellate court determined that defendant's armed robbery and aggravated battery convictions arose from an "unrelated course of conduct," and, therefore, he was eligible to receive an extended-term sentence for the aggravated battery conviction pursuant to section 5—8—2(a). 313 Ill. App. 3d at 286.

In holding that defendant was eligible to receive an extended-term sentence, the appellate court reasoned that there were two possible tests for determining if a defendant's offenses arise from an "unrelated course of conduct." 313 Ill. App. 3d at 285. One test is derived from section 5—8—4(a) of the Code (730 ILCS 5/5—8—4(a) (West 1998)), which controls the imposition of consecutive sentences for multiple convictions. Section 5—8—4(a) states:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation

of Section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961 ***." 730 ILCS 5/5—8—4(a) (West 1998).

Therefore, generally, under section 5—8—4(a) consecutive sentences will not be imposed where a defendant commits offenses that were part of a "single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(a) (West 1998). This test is frequently referred to as the "independent motivation" test. See, *e.g.*, *People v. Kagan*, 283 Ill. App. 3d 212, 220 (1996); *People v. Fritz*, 225 Ill. App. 3d 624, 629 (1992); *People v. Harris*, 220 Ill. App. 3d 31, 32 (1991); *People v. Ingram*, 84 Ill. App. 3d 495, 498 (1980); *People v. Siglar*, 18 Ill. App. 3d 381, 383 (1974).

The second test considered by the appellate court was the "multiple acts test" (313 Ill. App. 3d at 285), which was originally discussed in the context of extended-term sentences in a special concurrence by Justice Cook in *People v. Keene*, 296 Ill. App. 3d 183, 191 (1998) (Cook, J., specially concurring).[2] Under the "multiple acts test," offenses arise from an "unrelated course of conduct" when the offenses are supported by more than one physical act, unless one offense is an included offense. 313 Ill. App. 3d at 284-85.

Examining the two tests, the appellate court concluded that the section 5—8—4(a) test—whether there was a "substantial change in the nature of [a defendant's] criminal objective"—"has potential for confusion and gives less guidance to trial courts." 313 Ill. App. 3d at 285. The court rejected that test and, instead, adopted the multiple acts test for the purpose of determining whether multiple offenses arise from an "unrelated course of conduct" under section 5—8—2(a).

---

[2] The multiple acts test originally was formulated by this court to determine whether multiple convictions and concurrent sentences may be imposed. See *People v. King*, 66 Ill. 2d 551, 560-66 (1977).

Applying the multiple acts test to the case at bar, the appellate court held that defendant's offenses of armed robbery and aggravated battery were supported by more than one physical act and, therefore, were part of an "unrelated course of conduct." 313 Ill. App. 3d at 285. The court noted that the evidence showed defendant struck and kicked Powell before reaching into his trousers and taking money. Defendant then struck and kicked Powell again. Based on these facts, the court found that "[d]efendant's act of armed robbery, taking money from Powell's pants while armed with a dangerous weapon, was a separate and distinct act from defendant's act of striking and kicking [the victim]. The act of reaching into Powell's pants and taking his money was a separate act from the act of striking and kicking [the victim]." 313 Ill. App. 3d at 285-86. The court held that, although the "acts had some connection to each other, *** [defendant] committed two separate acts and two separate crimes." 313 Ill. App. 3d at 286. The appellate court concluded that defendant was eligible for an extended-term sentence for aggravated battery and, therefore, was properly sentenced. 313 Ill. App. 3d at 286.

We granted defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## ANALYSIS

Before this court, defendant contends that he was not eligible for an extended-term sentence under section 5—8—2(a) of the Unified Code of Corrections (730 ILCS 5/5—8—2(a) (West 1998)) because his offenses of armed robbery and aggravated battery were not part of an "unrelated course of conduct."

Section 5—8—2(a) of the Unified Code of Corrections governs the imposition of an extended-term sentence and provides:

"A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence autho-

rized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." 730 ILCS 5/5—8—2(a) (West 1998).

In *Jordan*, 103 Ill. 2d 192, we interpreted section 5—8—2(a) to mean that a defendant who is convicted of multiple offenses may be sentenced to an extended-term sentence only on those offenses that are within the most serious class. *Jordan*, 103 Ill. 2d at 205-06. However, extended-term sentences may be imposed "on separately charged, differing class offenses that arise from *unrelated courses of conduct*." (Emphasis added.) *Coleman*, 166 Ill. 2d at 257.

This court has not yet adopted a test to determine whether multiple offenses arise from an "unrelated course of conduct" for purposes of extended-term sentencing under section 5—8—2(a). Defendant argues that we should adopt the section 5—8—4(a) test, used to determine whether offenses arise from a "*single* course of conduct," for purposes of consecutive sentencing, to determine the similar question of whether multiple offenses arise from an "*unrelated* course of conduct" for purposes of extended-term sentencing under section 5—8—2(a). Generally, under section 5—8—4(a), consecutive sentences will not be imposed "for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." Thus, defendant contends that the section 5—8—4(a) test—whether there was a "substantial change in the nature of [defendant's] criminal objective"—should be used to determine whether multiple offenses are part of an "unrelated course of conduct" under section 5—8—2(a). According to defendant, the adoption of a different test to interpret "unrelated courses of conduct" and "single courses of conduct" will lead to confusion in the trial courts. Defendant thus

contends that the appellate court erred in adopting the multiple acts test to determine whether offenses are part of an "unrelated course of conduct."

The State, in response, argues that the appellate court correctly adopted the multiple acts test to determine whether multiple offenses arise from an "unrelated course of conduct." Under the multiple acts test, when two or more offenses are supported by more than one physical act, the offenses arise from an "unrelated course of conduct," unless one offense is an included offense. 313 Ill. App. 3d at 284-85. The State argues that the multiple acts test provides courts with more guidance and less confusion than the section 5—8—4(a) test by giving courts a "clear standard" to determine whether multiple offenses arise from an "unrelated course of conduct." In addition, the State contends that whether offenses arise from a "single" or separate course of conduct for purposes of consecutive sentencing under section 5—8—4(a) is a separate issue from whether the offenses arise from an "unrelated course of conduct" for purposes of extended-term sentencing under section 5—8—2(a). According to the State, the legislature's decision to draft two separate provisions for a consecutive sentencing determination and an extended-term sentencing determination indicates that the two sentencing determinations require different standards. We disagree with the State's contentions.

We hold that the section 5—8—4(a) test—whether there was a "substantial change in the nature of [defendant's] criminal objective"—is the proper test for determining whether multiple offenses arise from an "unrelated course of conduct" pursuant to section 5—8—2(a). We do so for two reasons.

First, in adopting the section 5—8—4(a) test to determine whether offenses arise from an "unrelated course of conduct," we minimize any confusion that may

result in the trial courts if two different tests were required to determine whether offenses are part of a "single" or separate course of conduct under section 5—8—4(a) and whether they are part of an "unrelated course of conduct" under section 5—8—2(a). As we discuss below, if we were to adopt the multiple acts test, a court could find that a defendant's offenses were part of a "single course of conduct" and impose consecutive sentences pursuant to section 5—8—4(a), and then find that those same offenses were part of an "unrelated course of conduct" and impose an extended-term sentence on a lesser class offense pursuant to section 5—8—2(a).

The case at bar provides an example of the confusion that could result. Here, the trial court specifically found that defendant's offenses were part of a "single course of conduct" and, accordingly, sentenced him to concurrent sentences under section 5—8—4(a). The trial court then sentenced defendant to an extended-term sentence for the lesser class offense of aggravated battery. Although neither defendant nor the State contested the trial court's finding that defendant's offenses were part of a "single course of conduct" under section 5—8—4(a), defendant did appeal the trial court's imposition of an extended-term sentence. On appeal, the appellate court applied the multiple acts test to determine whether defendant was eligible for an extended-term sentence and found that defendant's offenses were part of an "unrelated course of conduct." Thus, under the appellate court's reasoning, defendant's offenses were, at the same time, part of a "single" yet "unrelated" course of conduct. In adopting the same test to determine whether offenses were part of a "single course of conduct" and whether the same offenses were part of an "unrelated course of conduct," we avoid the possibility of such an absurd result.

Second, under the multiple acts test, virtually all offenses will be "unrelated," because different offenses generally require proof of different physical acts. Indeed, the State conceded at oral argument that, under the multiple acts test, it is "a possibility" that any two crimes would be considered unrelated, such that an extended-term sentence would be appropriate in nearly every situation. The only example the State could offer as to when a court would be prohibited from imposing an extended-term sentence on a lesser class offense would be a case in which a defendant shoots a bullet into one person, and the bullet exits the body of that person and enters another person, thereby killing both persons.

We do not believe that section 5—8—2(a) should or was intended to address such limited situations, especially because, even under the State's "single bullet" scenario, an extended-term sentence would not be possible. In *People v. Segara*, 126 Ill. 2d 70 (1988), we held that " 'if exactly the same physical act does form the basis for more than one offense, a defendant may still be prosecuted for each offense, but only one conviction and sentence may be imposed.' " *Segara*, 126 Ill. 2d at 77, quoting H. Eisenberg, *Multiple Punishments for the "Same Offense" in Illinois*, 11 S. Ill. U. L.J. 217, 237 (1987). Thus, where two offenses result from the same physical act, there would be no need to determine whether those offenses are part of an "unrelated course of conduct," because only *one* conviction and sentence will be imposed. It appears then that an extended-term sentence would be permissible in essentially every situation under the multiple acts test. However, as we have held, imposition of an extended-term sentence on a lesser class offense is not appropriate in every situation but, rather, is appropriate only where offenses arise from an "unrelated course of conduct."

The State relies upon *People v. King*, 66 Ill. 2d 551

(1977), in which this court found problematic the use of the section 5—8—4(a) test to determine whether a defendant convicted of multiple offenses may have concurrent sentences imposed. *King*, 66 Ill. 2d at 564. In *King*, we adopted the multiple acts test for determining whether concurrent sentences are appropriate. *King*, 66 Ill. 2d at 566. However, we observed a "distinction" between the imposition of consecutive and concurrent sentences and held that a defendant is prejudiced if he receives "consecutive sentences for crimes arising from multiple acts motivated by essentially the same criminal objective." *King*, 66 Ill. 2d at 565. We noted that a defendant's criminal objective is relevant in determining whether consecutive sentences may be imposed. *King*, 66 Ill. 2d at 565. The issue in the case at bar, whether a defendant is eligible for an extended-term sentence, is more akin to a determination of whether a defendant can receive consecutive sentences than it is to a determination of whether multiple convictions and concurrent sentences may be imposed. Indeed, we have previously relied on section 5—8—2(a), which governs extended-term sentencing, in construing section 5—8—4(a), which governs consecutive sentencing. See *People v. Terrell*, 132 Ill. 2d 178, 229 (1989) ("Although the statute we are discussing authorizes the imposition of consecutive sentences, rather than extended terms of imprisonment, it too concerns a sentence of 'imprisonment' "). Therefore, the State's reliance on *King* is misplaced.

We hold that, in determining whether a defendant's multiple offenses are part of an "unrelated course of conduct" for the purpose of his eligibility for an extended-term sentence under section 5—8—2(a), courts must consider whether there was a substantial change in the nature of the defendant's criminal objective. If there was a substantial change in the nature of the criminal objective, the defendant's offenses are part of an "unrelated

course of conduct" and an extended-term sentence may be imposed on differing class offenses. If, however, there was no substantial change in the nature of the criminal objective, the defendant's offenses are not part of an unrelated course of conduct, and an extended-term sentence may be imposed only on those offenses within the most serious class.

Having adopted the section 5—8—4(a) test for determining whether multiple offenses are part of an "unrelated course of conduct" pursuant to section 5—8—2(a), we apply that test to the case at bar. Here, the trial court found that defendant's offenses of armed robbery and aggravated battery were the result of a "single course of conduct" under section 5—8—4(a). Because this finding was not contested by either party, we accept it for the purpose of this appeal. Based on the trial court's finding that defendant's offenses were part of a "single course of conduct," those offenses cannot be part of an "unrelated course of conduct." Consequently, defendant is eligible for an extended-term sentence only on the most serious class offense. Aggravated battery is a Class 3 felony and is a less serious class of offense than armed robbery, a Class X felony. 720 ILCS 5/12—4(e), 18—2(b) (West 1998). Therefore, the trial court erred in imposing an extended-term sentence on defendant's aggravated battery conviction.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed. We vacate the circuit court's imposition of an extended-term sentence for defendant's aggravated battery conviction. We remand the matter to the circuit court with directions to resentence defendant for the aggravated battery conviction pursuant to section

5—8—1(a)(6) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(6) (West 1998)).

*Appellate court judgment reversed;*
*circuit court judgment vacated in part;*
*cause remanded with directions.*

JUSTICE GARMAN took no part in the consideration or decision of this case.