2015 IL App (3d) 121014

Opinion filed April 21, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-12-1014 Circuit No. 11-CF-37 |
| | ) | |
| AARON M. ARBUCKLE, | ) ) | Honorable Cornelius J. Hollerich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Lytton specially concurred, with opinion.

**OPINION**

¶ 1     Defendant, Aaron M. Arbuckle, was charged with aggravated domestic battery (720

ILCS 5/12-3.3(a) (West 2010)) and aggravated battery (720 ILCS 5/12-4(b)(1) (West 2010)).  At

defendant's plea hearing, the court informed defendant that he was eligible for extended-term

sentences on each count.  Defendant did not object and did not later raise the issue in a

postsentencing motion.  The court sentenced defendant to consecutive terms of 5½ and 4 years'

imprisonment on the two counts, respectively.  Among the aggravating factors cited by the court

was the degree of harm defendant inflicted upon the victims.  Defendant appeals his sentence on

the grounds that (1) the court erroneously found him extended-term eligible; (2) counsel was

ineffective for failing to raise the issue of defendant's extended-term eligibility; (3) the court's consideration of the harm done to the victim constituted an improper double enhancement where "great bodily harm" was an element of the charged offense; and (4) the court failed to consider certain mitigating factors, resulting in an excessive sentence. We affirm.

¶ 2                                                    FACTS

¶ 3            On June 9, 2011, the State charged defendant with aggravated domestic battery (count I) (720 ILCS 5/12-3.3(a) (West 2010)) and aggravated battery (count II) (720 ILCS 5/12-4(b)(1) (West 2010)).  With respect to count I, the State alleged in the aggravated domestic battery information that defendant struck his girlfriend, Kayla Zimmerlein, with a golf club, resulting in great bodily harm.  On count II, the State alleged that defendant stabbed Nicole Reuter with a broken golf club.

¶ 4            Defendant entered an open guilty plea on September 22, 2011.  While admonishing defendant, the court informed him that the maximum prison term for aggravated domestic battery, a Class 2 felony, would be 14 years' imprisonment.  Defendant was eligible for an extended-term sentence due to a prior Class 2 conviction.  He was also not eligible for probation. The court also informed defendant that he was extended-term eligible on the aggravated battery charge, a Class 3 felony: "The maximum prison sentence normally would be five years for a Class 3 felony.  But because of the prior Class 2 conviction in 2005 in Lee County, you would be eligible for extended term ***.  The maximum prison sentence could be ten years rather than five."

¶ 5            The factual basis established that defendant lived with his girlfriend, Zimmerlein, in an apartment.  Reuter lived in an adjacent apartment, and a get-together was held in the common patio area of the apartments.  After an altercation between defendant and another male,

2

Zimmerlein took defendant back to their apartment. She returned to the gathering. When Zimmerlein later returned to the apartment, defendant struck Zimmerlein with a golf club, breaking her arm. Zimmerlein called for help, at which point Reuter entered the apartment. Defendant then struck Reuter with the club, leaving a puncture mark on her torso. The court accepted the guilty plea and scheduled the matter for sentencing.

¶ 6 The sentencing hearing was held on November 28, 2011. Defendant's brother, grandmother, and friend testified on his behalf. Each testified that defendant had a problem with alcohol. Defendant also made a statement. He explained that he had been drinking on the night in question. He began hallucinating and thought he was being attacked. "I thought I was actually protecting when what I was doing was the exact opposite."

¶ 7 The court also considered the presentence investigation report (PSI). The PSI indicated that defendant had been convicted of burglary—a Class 2 felony—in 2005. It also showed multiple convictions for domestic battery (in 2006 and 2009) as well as a conviction for driving under the influence. The PSI also indicated that defendant had previously been diagnosed with bipolar disorder and alcohol dependence. Attached to the PSI were letters from defendant and other family members. Each letter addressed defendant's problems with alcohol.

¶ 8 At the sentencing hearing, the State submitted the victim impact statements of Zimmerlein and Reuter, as well as Zimmerlein's medical records. In Zimmerlein's letter, received more than four months after the battery, she described the injury as follows:

> "The ulna bone in my left arm was pretty *** shattered except
> for a piece by my wrist and a piece by my elbow. The rest was just
> crushed fragments. The doctor had to scrape and clean all the tiny

3

little pieces that were left. He the[n] had to put in a plate and five screws just to keep my arm together."

Zimmerlein also wrote that she had amassed more than $25,000 in medical expenses. She was unable to lift more than five pounds with her arm, which affected her ability to work.

¶ 9    Zimmerlein wrote that the injury was worse than her doctor originally expected. Following the initial surgery, the doctor informed her there was no sign of bone growth. Zimmerlein was put on a bone stimulation system, which did not work. She was to undergo further surgery to correct the problem. Zimmerlein claimed that if that surgery was unsuccessful, her arm "could be like this for the rest of [her] life." She still suffered from daily pain in her arm.

¶ 10    Medical reports classified Zimmerlein's injury as a "Grade I open left ulna shaft fracture with comminution involving greater than 5 pieces." The reports also detailed the "nonunion" of the fracture, as well as the lack of progress with a bone stimulator. The last medical report in the PSI, dated October 14, 2011, indicated that Zimmerlein would need surgery to remove a bone graft. The doctor noted that he did not discern "any progression at all in the fracture gap."

¶ 11    At argument, the State posited that defendant was extended-term eligible on both counts. The State asked for sentences of seven and five years' imprisonment on count I and count II, respectively. Defendant asked for a recommendation of impact incarceration.

¶ 12    After a recess, the court stated that it had considered the victim impact statements, letters written on behalf of defendant, and the PSI, including all attached reports. The court also "reviewed the factors in mitigation and aggravation." The court opined that the only applicable factor in mitigation was that defendant's conduct was clearly the result of his intoxication. The court considered this a "substantial ground[] tending to excuse or justify the defendant's criminal conduct" but failing to establish a defense. Addressing other statutory factors in mitigation, the

4

court pointed out that there was no evidence that incarceration would affect defendant's dependents; the court did not find defendant was unlikely to commit further crime.

¶ 13    In aggravation, the court noted the seriousness of the injuries inflicted. The court also emphasized defendant's extensive list of prior convictions and the need to deter others from committing the same crime. The court concluded: "But clearly the factors in aggravation outweigh the factors in mitigation, for whatever that's worth. But I have reviewed all of those factors, even if I haven't specifically mentioned them here in court."

¶ 14    In delivering the sentence, the court mentioned that it was "struck by both injuries" in the present case. The court pointed out that one of the injuries "could be an injury about which nothing can be done." The court found defendant eligible for impact incarceration, but decided that such a sentence would "deprecate the seriousness of the two offenses here." The "extent of the injuries here" also affected the court's decision not to recommend impact incarceration.

¶ 15    The court reiterated that the State had informed the court that defendant was eligible for extended-term sentences on each count. The court sentenced defendant to a term of 5½ years' imprisonment on the count of aggravated domestic battery and a term of 4 years' imprisonment on the count of aggravated battery. The court found that consecutive sentences were necessary to protect the public.

¶ 16    Defendant subsequently filed a motion to reconsider sentence. In the motion, defendant argued that he had been subjected to an improper double enhancement when the sentencing court considered the physical injury caused as an aggravating factor. He also argued that the court failed to consider, as a mitigating factor, that defendant did not "contemplate that his criminal conduct would cause or threaten serious physical harm to another." The court denied the motion.

¶ 17    On appeal, this court remanded the matter due to an error with the Illinois Supreme Court

5

Rule 604(d) (eff. Feb. 6, 2013) certificate. *People v. Arbuckle*, No. 3-12-0285 (Aug. 16, 2012) (dispositional order). On remand, defendant was granted leave to file a second motion to reconsider sentence. That motion was denied following a hearing. Defendant appeals.

¶ 18                                                      ANALYSIS

¶ 19                                            I. Extended-Term Eligibility

¶ 20        Defendant argues that he was not eligible for an extended sentence on the count of aggravated battery. He contends that a trial court may only impose an extended-term sentence for the most serious offense committed during a single course of conduct. Because defendant raises this issue for the first time on appeal, he urges that we review the issue under the rubric of plain error.

¶ 21        The nonextended permissible sentence range for a Class 3 felony is not less than two and not more than five years' imprisonment. 730 ILCS 5/5-4.5-40(a) (West 2010). The permissible sentencing range for an extended-term eligible defendant convicted of a Class 3 felony is a term of not less than 5 and not more than 10 years' imprisonment. Defendant here was sentenced to a term of four years' imprisonment, a sentence within the nonextended range.

¶ 22                                                    A. Plain Error

¶ 23        To preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). As defendant has failed to take either of these steps, he has forfeited his claim. As a result, we may only review the claim if defendant has established plain error. *Id*. at 545.

¶ 24        Our supreme court has clarified on many occasions that the plain error doctrine is a narrow and limited exception to the general forfeiture rule. *E.g.*, *id*.; *People v. Herron*, 215 Ill. 2d 167, 177 (2005) (listing supreme court cases holding the same). To obtain relief under the

6

plain error exception, a defendant must first demonstrate that a "clear or obvious error" has occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). From there, a defendant must satisfy one of two prongs. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. Should a defendant fail to meet his burden at any point, the procedural default must be honored. *Id*.

¶ 25                                      1. Clear or Obvious Error

¶ 26            The first step in any plain error analysis is determining whether any clear or obvious error has occurred. *Piatkowski*, 225 Ill. 2d at 565. In the present matter, defendant contends that the trial court's belief that he was eligible for an extended-term sentence for aggravated battery was such an error.

¶ 27            Section 5-8-2(a) of the Unified Code of Corrections governs the imposition of an extended-term sentence and provides:

> "A judge shall not sentence an offender to a term of imprisonment
> in excess of the maximum sentence authorized by Article 4.5 of
> Chapter V for an offense or offenses within the class of the most
> serious offense of which the offender was convicted unless the
> factors in aggravation set forth in Section 5-5-3.2 or clause
> (a)(1)(b) of Section 5-8-1 were found to be present." 730 ILCS
> 5/5-8-2(a) (West 2010).

Our supreme court has interpreted this section to mean that "a defendant who is convicted of multiple offenses may be sentenced to an extended-term sentence only on those offenses that are within the most serious class." *People v. Bell*, 196 Ill. 2d 343, 350 (2001). Only when charges

7

of differing class offenses arise from "unrelated courses of conduct" may a court sentence a defendant to extended-term sentences on offenses in different classes. *Id*.

¶ 28    The *Bell* court adopted the "single course of conduct" standard for determining whether a defendant is eligible for an extended-term sentence on a lesser charge.[1] *Bell*, 196 Ill. 2d at 352. Under this standard, multiple offenses arise from unrelated courses of conduct—triggering extended-term eligibility—when there is a " 'substantial change in the nature of [defendant's] criminal objective.' " *Id.* at 351 (quoting 730 ILCS 5/5-8-4(a) (West 1998)).

¶ 29    Because the issue of defendant's extended-term eligibility was never raised, the record is not well developed as to whether defendant's actions constituted a single course of conduct. The factual basis offered by the State at the plea hearing only established that Reuter was struck sometime after Zimmerlein had called for help. The State does not contest defendant's assertion on appeal that he was not extended-term eligible. We will therefore assume, for the sake of argument, that defendant was not extended-term eligible.

¶ 30    However, assuming that defendant was not extended-term eligible does not end our analysis. An error is committed only where it appears that a trial court's misapprehension arguably influenced its sentencing decision. *People v. Hurley*, 277 Ill. App. 3d 684, 687 (1996). In the present case, the court informed defendant that he was extended-term eligible at the plea hearing. The court's only comment on the subject at sentencing was a reference to *the State's* belief that defendant was extended-term eligible. Indeed, despite myriad aggravating factors, the court sentenced defendant to a term of imprisonment significantly below the extended-term

---

[1] The standard is the same applied under section 5-8-4 of the Unified Code of Corrections to determine the aggregate maximum and minimum sentences when consecutive sentences are imposed. See 730 ILCS 5/5-8-4(f)(2) (West 2010).

8

range—indicative that the court did not consider defendant extended-term eligible.

¶ 31 In *People v. Myrieckes*, 315 Ill. App. 3d 478 (2000), this court found plain error where the trial court was under the mistaken impression that the defendant was extended-term eligible. The facts of *Myrieckes* are distinguishable from those in the case at hand and help illustrate why no such error was committed here. In *Myrieckes*, unlike here, it was plainly clear that the defendant was not extended-term eligible: the trial court instructed the defendant that his charges raised the possibility of an extended-term sentence if the complainant was " '12 years or under,' " while the controlling statute actually read " '*under* 12 years of age.' " (Emphasis in original.) *Id*. at 480, 483. Both victims in *Myrieckes* were precisely 12 years old. Further, at sentencing, the court apparently reiterated its belief that the defendant was extended-term eligible. *Myrieckes*, 315 Ill. App. 3d 478. The trial court sentenced the defendant to the maximum nonextended term of 30 years' imprisonment; the reviewing court, reasoning that it could not be sure whether the court's mistaken belief affected the sentence, remanded for resentencing. *Id*.

¶ 32 Here however, it is far from clear that the trial court was operating under any mistaken impression as to defendant's extended-term eligibility. As discussed *supra*, the ultimate sentences imposed tend to indicate that the court, at the time of sentencing, did not believe defendant to be extended-term eligible. That the court found consecutive sentences necessary, yet still sentenced defendant within the nonextended range, further evidences this point. And unlike in *Myrieckes*, we can be reasonably sure that even if the court here did believe that defendant was extended-term eligible, this mistaken belief did not affect the sentencing decision. We find that the trial court did not commit any "clear or obvious" error.

¶ 33                                        2. Second Prong of Plain Error

9

¶ 34        Even if the trial court erroneously believed defendant to be extended-term eligible, it would not rise to the level of plain error. Illinois Supreme Court Rule 615(a) allows that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Our supreme court has held this rule provides criminal defendants with two possible avenues for relief with respect to unpreserved errors. See *Piatkowski*, 225 Ill. 2d at 565; see also *Herron*, 215 Ill. 2d at 178 ("The plain-error doctrine, as it has developed in Illinois, allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances.").

¶ 35        Under the first prong of the plain error doctrine, a reviewing court may address an otherwise forfeited issue when a defendant shows that "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Piatkowski*, 225 Ill. 2d at 565. In the context of sentencing, this prong is satisfied when a defendant demonstrates that the evidence at a sentencing hearing was closely balanced. *Hillier*, 237 Ill. 2d at 545. In the present case, defendant does not contend that the evidence at sentencing was closely balanced and does not assert that the issue of his extended-term eligibility is reviewable pursuant to this first prong.

¶ 36        Our supreme court has held that the second prong of the plain error doctrine is triggered where "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187; see also *Piatkowski*, 225 Ill. 2d at 565 (using the same language). The court has referred to this as the "substantial rights" prong. *Herron*, 215 Ill. 2d at 186. At sentencing, the second prong is triggered where "the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 37        In recent years, the supreme court has elaborated on the meaning of the second prong of

10

plain error analysis, equating the second prong with the concept of "structural error." *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). In *Thompson*, the court described a structural error as one which erodes the integrity of the judicial process and undermines the fairness of a trial— language almost identical to the court's formulation of the second prong of plain error. *Id.* More recently, the court has simply held that "[i]n order to obtain relief [under the second prong of plain error], defendant must demonstrate not only that a clear or obvious error occurred [citation], but that the error was a structural error." *People v. Eppinger*, 2013 IL 114121, ¶ 19. Errors such as denial of counsel, trial before a biased judge, denial of self-representation at trial, and trial by a biased jury fall into the category of a "structural error." *Thompson,* 238 Ill. 2d at 608-09 (listing cases of structural error).

¶ 38    Defendant relies primarily on *Myrieckes,* 315 Ill. App. 3d 478, in arguing that the present issue is reviewable under the second prong of plain error. While *Myrieckes* is distinguishable on its facts from the present case, that court's decision that the error committed triggered second-prong plain error analysis is relevant here. On appeal in that case, the State argued that the issue of defendant's extended-term eligibility had been waived. The court decided that it could be reviewed under plain error: "[B]ased upon our review of the record in this case, we find that a substantial right of defendant has been affected. [Citation.] Therefore, we will review the alleged error under the plain error doctrine." *Id*. at 483. In *Hurley*, 277 Ill. App. 3d at 686, the Second District found the same error reviewable under similar facts. Defendant contends that, "[f]ollowing the reasoning in *Myrieckes*," the issue of the court's misapprehension of his extended-term eligibility is reviewable under the second prong of plain error.

¶ 39    Neither *Myrieckes* and *Hurley*, however, offers any justification for the finding that the issue was reviewable. In each case, the courts baldly assert that the trial court's mistaken belief

11

affected a substantial right of the defendants. Neither court explained how the trial court's error affected the fairness of the proceedings or challenged the integrity of the judicial process. Indeed, following *Herron*, the mere affecting of a substantial right is not a justification for review under the second prong. See *Herron*, 215 Ill. 2d at 177 (finding that plain error doctrine "is not 'a general saving clause preserving for review all errors affecting substantial rights' " (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978))). To the extent that *Myrieckes* is applicable to the case at hand, we refuse to follow it and find that the error in this case does not trigger review under the second prong of plain error.

¶ 40 The court here sentenced defendant within the standard sentencing range for a Class 3 felony. In fact, defendant was sentenced to a term of imprisonment *well* within that range. Despite the numerous aggravating factors identified by the court, including multiple prior convictions for domestic battery and a Class 2 burglary conviction, the court sentenced defendant only to a term of four years' imprisonment. This term of imprisonment is one year (or 20%) less than the maximum *non*extended sentence. Given the restraint shown by the trial court, we cannot find that its belief that defendant was extended-term eligible "was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545.

¶ 41 It is also important to point out that *Myrieckes* and *Hurley* were decided 14 and 18 years ago, respectively, and plain error jurisprudence has evolved significantly in the intervening years. Only in the last five years has our supreme court clarified that the second prong of plain error should be equated with the concept of structural error. Structural errors tend to be those egregious errors where a fundamental right has been violated, such as the right to counsel. While any error in a criminal trial may be said to affect a "substantial right"—the defendant's right to freedom—the supreme court has significantly narrowed the second prong by holding that only

12

structural errors constitute plain error. A court's belief that a defendant is extended-term eligible—where the defendant is ultimately sentenced to a term of imprisonment well within the nonextended range—does not rise to the intolerable level of structural error.

¶ 42 Finally, we must heed our supreme court's advice that the plain error doctrine is to be invoked only in limited circumstances. "A fair trial *** is different from a perfect trial[,]" and plain error should not act as a general saving clause. *Herron*, 215 Ill. 2d at 177. Indeed, plain error is a narrow path to relief, narrowed even further by Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013), which requires a defendant who pleads guilty to file certain postsentence motions to perfect any appeal. To find second-prong plain error in the situation here presented would be to completely undermine the requirements of contemporaneous objection and postsentencing motion, including those requirements codified in Supreme Court Rule 604(d). It would turn the plain-error exception into a general saving clause. If any error were committed in this case, it would not constitute plain error; we will honor defendant's forfeiture.

¶ 43                                B. Ineffective Assistance of Counsel

¶ 44 Defendant also argues that the assistance he received from counsel was ineffective for counsel's failure to raise the issue of defendant's extended-term eligibility. Whether counsel provided ineffective assistance turns on the well established two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). See also *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting the *Strickland* test in Illinois). To establish that counsel was ineffective, a defendant must show that: (1) counsel's performance was objectively unreasonable; and (2) the defendant suffered prejudice as a result. *Strickland*, 466 U.S. at 687. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Colon*, 225 Ill. 2d 125, 135 (2007).

13

¶ 45    To satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the present case, defendant would have to show that, had counsel objected to the proposition that defendant was extended-term eligible, a reasonable probability exists that defendant would have received a lesser sentence. Defendant has not met that burden.

¶ 46    Defendant used a broken golf club to stab Reuter, who had come to her friend's aid. For this, defendant was sentenced only to a term of four years' imprisonment. This was despite a list of aggravating factors that the trial court found to greatly outnumber any mitigating factors. As discussed *supra*, the four-year sentence was not in the extended range, nor was it even the maximum allowable sentence within the standard sentencing range. We find no reasonable probability that the trial court could have been any more lenient in its sentencing.

¶ 47                                   II. Great Bodily Harm

¶ 48    Defendant next contends that the trial court erred in considering the harm done to Zimmerlein as an aggravating factor at sentencing. Because "great bodily harm" is a necessary element of aggravated domestic battery,[2] defendant argues, consideration of the harm as an aggravating factor serves as an improper double enhancement. Whether a court relied on an improper factor at sentencing is a question of law that we review *de novo*. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 15. The weight given to any aggravating factor, however, is a

---

[2] Aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2010)) is committed when "[a] person who, in committing a domestic battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement."

14

matter of the trial court's sound discretion, and will not be disturbed absent an abuse of that discretion. See *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 11.

¶ 49    In *People v. Saldivar*, 113 Ill. 2d 256 (1986), our supreme court addressed this issue directly. The court stated:

> "Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, *regardless of whether the offense itself deals with harm*, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor." (Emphasis added.) *Id*. at 269.

Furthermore, the court found:

> "[T]he severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted*." (Emphases in original.) *Id.*

¶ 50    The *Saldivar* court nevertheless found that the trial court, in sentencing the defendant for voluntary manslaughter, improperly considered the death of the victim as an aggravating factor. *Saldivar*, 113 Ill. 2d at 272. Defendant relies on the result in *Saldivar*, rather than the supreme court's expression of the law, in making his argument here.

15

¶ 51       *Saldivar*, however, is distinguishable from the case at bar, just as the offense of voluntary manslaughter is distinguishable from aggravated domestic battery. The offense of voluntary manslaughter is plainly one in which the harm caused—that is, death of the victim—does not occur in varying degrees. Great bodily harm, on the other hand, can certainly exist in varying degrees. There is great bodily harm and then there is great bodily harm.

¶ 52       Apparently recognizing that "great bodily harm" may come in varying degrees, defendant argues that the harm he caused in the present case is not of a sufficient degree to merit consideration at sentencing. Defendant cites to *People v. Rader*, 272 Ill. App. 3d 796, 808 (1995), in support of the proposition that injuries must "far exceed" the statutory definition of great bodily harm in order to be properly considered as an aggravating factor. In *Rader*, the victim suffered from legal blindness, loss of hearing, partial paralysis, brain damage, and seizures.

¶ 53       We agree that the degree of great bodily harm must rise above a baseline level before a court may consider the harm as an aggravating factor. We do not agree, however, that the grievous injuries suffered by the victim in *Rader* somehow sets this standard. In the present case, defendant shattered Zimmerlein's arm with a golf club. Zimmerlein's own description of the injury, confirmed by medical reports, was graphic and compelling. The bone had failed to mend despite extensive treatment and therapy. Zimmerlein suffered from continued pain that affected her on a day-to-day basis, and the injury still required further surgery. The court's finding that Zimmerlein's injury constituted a degree of harm beyond what is required to fall under the aggravated domestic battery statute was neither an abuse of discretion, nor against the manifest weight of the evidence.

¶ 54                                III. Mitigating Factors

16

¶ 55    Finally, defendant contends that the trial court erred by ignoring certain mitigating factors at sentencing, resulting in an excessive sentence. Specifically, defendant argues that the court failed to consider that defendant did not contemplate that his conduct would cause physical harm, nor did it consider his employment history or family ties. Defendant asks that we reduce his "excessive" sentence.

¶ 56    A trial court has broad discretion in sentencing a criminal defendant, and its sentencing decisions are given great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Such deference is necessary because the trial court is in a far better position than the reviewing court to weigh certain factors. " 'The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently.' " *Id*. at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210).

¶ 57    "There is a presumption that a trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). In the present case, defendant is unable to make such a showing. The trial court stated explicitly that it had reviewed all reports, statements, and the PSI. It also reviewed all factors in aggravation and mitigation, including those which it did not single out for extended

17

discussion at the sentencing hearing. Each of the mitigating factors defendant identifies here as being ignored were, in fact, covered in the trial court's review.

¶ 58 We also note that defendant argues that his problems with alcohol should be considered in mitigation, as his intoxication at the time of the batteries prohibited him from contemplating the harm that he was inflicting. Alcohol abuse, however, may be properly be considered as an aggravating factor. *People v. Scott*, 225 Ill. App. 3d 938, 941 (1992) ("A defendant's history of alcoholism may also be considered as evidence that his conduct is likely to recur."). Further, though defendant claimed his alcohol-induced hallucinations caused him to think he was protecting his girlfriend, he still knew that swinging the golf club would cause serious harm. The hallucination would merely tend to justify or excuse his actions, a mitigating factor the court *did* discuss.

¶ 59                                    CONCLUSION

¶ 60 For the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed.

¶ 61 Affirmed.

¶ 62 JUSTICE LYTTON, specially concurring.

¶ 63 I concur in the judgment affirming defendant's sentence because the trial court did not commit error in sentencing defendant, even though the court mistakenly believed defendant was extended-term eligible. However, I write separately to indicate my concern with the majority's implied position that where the defendant is not sentenced to an extended term, enhanced-eligibility sentencing errors do not fall into the category of a "structural error." See *Thompson*, 238 Ill. 2d at 608-09.

¶ 64 In *People v. Glasper*, 234 Ill. 2d 173 (2009), our supreme court defined a "structural error" as "a systemic error which serves to 'erode the integrity of the judicial process and

18

undermine the fairness of the defendant's trial.' " *Glasper*, 234 Ill. 2d at 197-98 (quoting *Herron*, 215 Ill. 2d at 186). The sentencing issue here was not error, but enhanced-eligibility sentencing errors may be systemic, structural errors, reviewable under plain error. See *People v. McBride*, 395 Ill. App. 3d 204, 208 (2009) (improper increase in sentencing in a matter affecting substantial rights); *People v. Lindsay*, 247 Ill. App. 3d 518, 535 (1993) (court imposed an unauthorized extended-term sentence reviewable under plain error); *People v. Fuergeson*, 132 Ill. 2d 86, 99 (1989) (imposition of an extended-term sentence constituted improper double enhancement subject to plain error review). I do not agree with the majority's assertion that in light of recent "structural error" case law, issues involving improper consideration of enhanced-sentencing eligibility, in which substantial rights are impacted, are not reviewable under the second prong of plain error.

¶ 65 In *Myrieckes* and *Hurley*, the trial court mistakenly believed that the defendant was extended-term eligible. In both cases, the appellate court determine that a substantial right of the defendant had been affected and that it was necessary to remand for resentencing because the reviewing court could not say with certainty that the improper factor (the court's misapprehension as to extended-term sentencing eligibility) did not affect the sentence imposed. *Myrieckes*, 315 Ill. App. 3d at 483; *Hurley*, 277 Ill. App. 3d at 686.

¶ 66 Here, the trial court's statements at the sentencing hearing demonstrated that the trial court sentenced defendant based on the nature and seriousness of the two crimes, particularly the seriousness of the injury to Zimmerlein. The court mentioned the State's argument that defendant was extended-term eligible, but did not rely on that factor in determining an appropriate sentence for each offense. By contrast, in *Myrieckes* and *Hurley*, the court's misapprehension that the defendant was extended-term eligible could not be ruled out as a factor

19

that may have been considered in sentencing. Consideration of such a factor, even if the defendant is not sentenced to an extended term, serves to erode the integrity of the judicial process. See *People v. Conover*, 84 Ill. 2d 400 (1981); see also *Herron,* 215 Ill. 2d at 186. We may be presented with other cases in which the trial court's misapprehension as to extended-term eligibility was a factor that influenced the sentencing decision, or at least arguably so, although the defendant was sentenced to a nonextended term. In such cases, the holdings in *Myrieckes* and *Hurley* are still good law and should be followed.