**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180594-U

Order filed July 16, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0594 Circuit No. 18-CF-517 |
| | ) | |
| DESHAWN B. SMITH, | ) ) | Honorable David M. Carlson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The State proved beyond a reasonable doubt that defendant possessed a firearm. (2) The circuit court improperly imposed an extended-term sentence on defendant's aggravated battery conviction.

¶ 2     Defendant, Deshawn B. Smith, appeals his convictions for being an armed habitual criminal and aggravated battery. Defendant contends that the State failed to prove beyond a reasonable doubt that he possessed a firearm, an element of being an armed habitual criminal. He further contends that the Will County circuit court improperly sentenced him to an extended term

for aggravated battery because that crime was a lower class offense than armed habitual criminal. We affirm as modified.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant with one count each of being an armed habitual criminal (720 ILCS 5/24-1.7(a)(2), (b) (West 2018)), aggravated battery by use of a deadly weapon (*id.* § 12-3.05(f)(1), (h)), aggravated battery by strangulation (*id.* § 12-3.05(a)(5), (h)), and aggravated unlawful restraint (*id.* § 10-3.1(a), (b)), and three counts of unlawful use of a weapon by a felon (*id.* § 24-1.1(a), (e)). The matter proceeded to a jury trial with defendant representing himself.

¶ 5        The victim, Anthony Panozzo, testified that he lived with his son, Evan, his girlfriend, Graciela Grossman, and Grossman's mother, Maria. Anthony Segura occasionally stayed at the home.

¶ 6        Defendant asked Panozzo to keep a black lock box for him. Panozzo put the black box in his garage. The box was locked when Panozzo received it, and he never opened it. Defendant's cousin came to Panozzo's residence and pried the box open. Panozzo noticed a gun inside the box. Defendant's cousin removed items from the box but left the gun. Panozzo returned the box to the garage.

¶ 7        Later, defendant came to Panozzo's house looking for the box. Panozzo explained that defendant's cousin took items from the box. Defendant opened the box, noticed items missing, and became angry. Defendant began hitting Panozzo with his fists and told him to get in the car. Defendant did not have a gun at that time. While in the car, defendant briefly strangled Panozzo. They went to defendant's cousin's house, but he was not there. Defendant and Panozzo returned

to Panozzo's residence where defendant punched Panozzo in the head and hit Panozzo with a handgun several times. Panozzo touched the gun while trying to block defendant's blows.

¶ 8    Panozzo had experience with guns and knew what a gun looked and felt like. Panozzo identified the gun that was inside the box as a "Series 1911 45." Panozzo said that defendant hit him with this gun. The gun was made of blue steel with a wood handle. Additionally, the gun was an automatic. The State asked Panozzo "And that 45, it looked like a gun, it felt like a gun, is that correct?" and Panozzo replied "Oh, it was a gun. *** No doubt about that."

¶ 9    Panozzo further testified that defendant "got a little crazy for awhile, and tried to shoot [Maria] *** and everybody." Defendant put the gun to Panozzo's face and told Panozzo he was going to kill him. Defendant also went to Maria's room. When the State asked if defendant indicated who he was going to start shooting first, Panozzo replied "Yeah, he said, [Maria], I'm going to kill everybody."

¶ 10    At some point, Panozzo escaped, ran a block or two away and asked a man if he could use his cell phone.

¶ 11    Segura testified that he arrived at Panozzo's home toward the end of the incident. Segura saw defendant run out of the home with a gun in his hand. Defendant ran toward his car in the driveway. Segura had been around guns before and had held a gun several times. Segura knew the item in defendant's hand was a gun and that it was a 1911 .45-caliber. Segura explained that the 1911 was a metal gun, and he had seen that type of gun before.

¶ 12    Officer John Ross of the Joliet Police Department arrived at Panozzo's residence in response to a 911 call. While communicating with the occupants, Ross noticed defendant inside a car. Ross went to speak with defendant, and defendant exited the car and became hostile.

Defendant initially told Ross there was a disturbance, but it was over. Defendant subsequently told Ross a disturbance did not occur.

¶ 13 After speaking with Panozzo, Ross took defendant into custody. Ross looked for a weapon but did not locate one. Ross testified that defendant "said we would not find the gun." When defendant made this statement, he was agitated, upset, and boastful that the police would not find the gun. Defendant was alone for an unspecified amount of time after leaving Panozzo's residence and prior to Ross's arrival. Ross did not know when defendant exited the house or where he was prior to being in the vehicle.

¶ 14 Ross confirmed that various photographs accurately reflected Panozzo's condition on the date of the incident and identified straight line marks on Panozzo's face which Ross indicated would have been caused by an object rather than a fist. Ross testified the straight line marks were consistent with Panozzo's statement that he was struck with a gun.

¶ 15 Evan testified that he observed an incident between Panozzo and defendant in the living room of Panozzo's residence. Evan did not clearly see defendant make contact with Panozzo, but he "saw his arm move—he was over him, and [Panozzo] was telling him to stop hitting him." Eventually, defendant walked away from Panozzo to the side door by the garage and Panozzo ran out the front door. Defendant reentered the house and asked where Panozzo went. The police arrived 5 or 10 minutes later. Evan did not see a gun, but he heard defendant say "[s]omething about shooting [Maria]."

¶ 16 Graciela testified that when she heard Panozzo and defendant arguing she went to Maria's room. Graciela heard defendant say " 'I'm gonna pop everybody. Who should I start with? Maybe I'll start with [Maria],' on and on and on and on." Defendant entered Maria's room holding a gun and pointing it at Graciela and Maria.

¶ 17    Defendant moved for a directed verdict and the court denied the motion. Defendant did not put on any evidence. The jury found defendant guilty of being an armed habitual criminal, three counts of unlawful use of a weapon by a felon, and aggravated battery by strangulation. It found defendant not guilty of aggravated battery by use of a deadly weapon and aggravated unlawful restraint. After trial, the court appointed the public defender to represent defendant. Counsel filed a motion for new trial, which the court denied.

¶ 18    At sentencing, the prosecutor noted that the unlawful use of a weapon convictions merged with the armed habitual criminal conviction and the sentencing range was 6 to 30 years' imprisonment. The prosecutor stated the aggravated battery charge was an extended term of 2 to 10 years' imprisonment. Defense counsel agreed. The court sentenced defendant to concurrent terms of eight years' imprisonment. Counsel filed a motion to reconsider sentence, and the court denied the motion. Defendant appeals.

¶ 19                                II. ANALYSIS

¶ 20                          A. Sufficiency of the Evidence

¶ 21    Defendant argues that his armed habitual criminal conviction must be reversed because the State failed to prove beyond a reasonable doubt that he possessed a firearm. To that end, he contends that the police did not recover a firearm and he did not have sufficient time or opportunity to dispose of a firearm.

¶ 22    When defendant challenges the sufficiency of the evidence "it is not the function of this court to retry the defendant." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Instead, we determine whether the evidence, viewed in the light most favorable to the State, permits any rational trier of fact to find the elements of the offense proven beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "A criminal conviction will not be set aside unless the

5

evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261. Witness credibility and the weight given to testimony are determinations left to the trier of fact. *People v. Nitz*, 143 Ill. 2d 82, 95 (1991). "When the facts in a case give rise to more than one inference, a reviewing court shall not substitute its judgment for that of the trier of fact unless the inference accepted by the trier of fact is inherently impossible or unreasonable." *People v. Price*, 225 Ill. App. 3d 1032, 1035 (1992). We must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 23     As relevant here, to find defendant guilty of being an armed habitual criminal, the State needed to prove beyond a reasonable doubt that defendant possessed a firearm. 720 ILCS 5/24-1.7(a) (West 2018). At trial, three witnesses—Panozzo, Segura, and Graciela—testified that they saw defendant with a gun. This testimony was highly credible as Panozzo and Segura were both familiar with guns and even testified to the model and caliber of the gun. Additionally, Panozzo further described the blue steel and wood handle that made up the gun.

¶ 24     In addition to Panozzo, Segura, and Graciela's consistent and detailed testimony of defendant's possession of the gun, Panozzo, Graciela, and Evan stated defendant threatened to shoot people, presumably with the gun Panozzo and Graciela saw in his hand. All three witnesses recalled defendant's specific threat to shoot Maria.

¶ 25     Ross testified that the straight line marks on Panozzo's face were consistent with Panozzo's statement that defendant struck him with a gun. Ross also testified that defendant told police that they "would not find the gun," impliedly indicating that he once possessed a gun.

¶ 26     Viewing all this evidence in the light most favorable to the State and allowing all reasonable inferences from this evidence in favor of the State, we cannot say it is "so improbable

6

or unsatisfactory" that it created a reasonable doubt that defendant possessed a gun. See *Collins*, 106 Ill. 2d at 261. To the contrary, this evidence pretty conclusively established the firearm possession element of the armed habitual criminal charge.

¶ 27        In reaching this conclusion, we reject defendant's argument that all five witnesses were not credible because the police did not find a gun and he could not have disposed of one before the police arrived. Evan's testimony established that there was approximately 5 to 10 minutes from when defendant left the house until the police arrived. Additionally, Ross testified there was some time when defendant would have been alone before he arrived and that when he arrived his attention was not initially on defendant. Ross did not know where defendant was prior to noticing defendant in his car. While the timeframe for defendant to dispose of a gun was limited, it was not so short that the jury's conclusion that he did so was "inherently impossible or unreasonable." See *Price*, 225 Ill. App. 3d at 1035.

¶ 28                              B. Extended-Term Sentencing

¶ 29        Defendant argues that he was not eligible for an extended-term sentence on the aggravated battery conviction because it was not in the same class of offenses as the higher class offense of armed habitual criminal. Defendant acknowledges that he forfeited this issue because he did not object to the extended term or include the error in his motion to reconsider sentence. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, he argues that it is a reversible plain error under the second prong. See *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The State concedes that the court erroneously imposed an extended-term sentence on defendant's aggravated battery conviction.

¶ 30        The plain-error doctrine permits review of an otherwise forfeited error. *Id.* at 544-45. To obtain sentencing relief under the second prong of the plain-error doctrine, a defendant must

show a clear or obvious error and that "the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* at 545.

¶ 31        From our review of the record, defendant has established that the court erred when it imposed an extended-term sentence on his aggravated battery conviction. When a defendant's offenses are part of a related course of conduct "an extended-term sentence may be imposed only on those offenses within the most serious class." *People v. Bell*, 196 Ill. 2d 343, 355 (2001). As charged in this case, aggravated battery is a Class 3 felony (720 ILCS 5/12-3.05(a)(5), (h) (West 2018)) and being an armed habitual criminal is a Class X felony (*id.* § 24-1.7(b)). Therefore, armed habitual criminal is a more serious class offense than aggravated battery, and the court erred in imposing an extended-term sentence on the aggravated battery charge. Moreover, we find that this plain error is so egregious as to deprive defendant of his right to a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. Accordingly, we accept the State's concession, and we reduce defendant's aggravated battery sentence to five years' imprisonment, the maximum nonextended-term sentence for a Class 3 Felony aggravated battery (730 ILCS 5/5-4.5-40(a) (West 2018) (nonextended sentencing range for a Class 3 Felony is two to five years' imprisonment)). See Ill. S. Ct. R. 615(b)(4).

¶ 32                                III. CONCLUSION

¶ 33        For the foregoing reasons, we affirm as modified the judgment of the circuit court of Will County.

¶ 34        Affirmed as modified.

8