2022 IL App (2d) 210126-U
No. 2-21-0126
Order filed February 24, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-CF-495 |
| | ) | |
| WAINER SOUSA ANCHETA, | ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) In sentencing defendant on his conviction of armed habitual criminal (AHC), (a) there was no improper double enhancement when the trial court considered in aggravation defendant's criminal history that included the two prior convictions that were elements of AHC, and (b) the trial court properly relied on evidence of defendant's discharge of a weapon, even though defendant was acquitted of the charges that alleged discharge of a weapon. (2) An extended-term sentence on the less serious of defendant's two convictions was proper where the offenses were charged separately and arose from unrelated courses of conduct.

¶ 2    Following a jury trial, defendant, Wainer Sousa Ancheta, was convicted of being an armed habitual criminal (AHC), a Class X felony, (720 ILCS 5/24-1.7(a), (b) (West 2018)) and of unlawful possession of a controlled substance (UPCS), a Class 4 felony, (720 ILCS 570/402(c)

(West 2018)). The trial court sentenced him to 27 years in prison on the AHC conviction and a concurrent five-year extended-term sentence on the UPCS conviction. On appeal, defendant contends that the trial court (1) erred in sentencing him on the AHC conviction, because it (a) weighed, in aggravation, factors inherent in the offense and (b) considered unreliable evidence of acquitted conduct; and (2) erred in imposing an extended-term sentence on the UPCS conviction, because it was not the highest-class felony of which he was convicted. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On February 27, 2019, defendant was indicted on two counts of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1), (b)(1) (West 2018)), two counts of AHC (*id.* § 24-1.7(a)), five counts of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2), (a)(3)), one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of unlawful possession of a firearm by a street gang member (*id.* § 24-1.8(a)(2)), and one count of UPCS (720 ILCS 570/402(c) (West 2018)). Before trial, the State dismissed one of the AHC charges and both unlawful-possession-of-a-weapon charges.

¶ 5      The matter proceeded to a jury trial, at which the following facts were established. On October 24, 2018, several Winnebago County sheriff's deputies were conducting surveillance on a house in Machesney Park, intending to take defendant into custody. Deputies Fred Jones and Jacob Marino were in an unmarked GMC Yukon, while Deputies James Abate and Jake Kaiser were in different unmarked vehicles. Each deputy was wearing plain clothes. The deputies observed Jackquilynn Solovic exit the house and enter the driver's side of a Mercedes Benz. Defendant later followed and entered the front passenger door of the Mercedes. The Mercedes drove away, and the deputies followed. Marino contacted additional officers, intending to have a marked squad car stop the Mercedes.

¶ 6    The deputies followed the Mercedes as it entered a gas station in Rockford and parked next to a gas pump. Jones saw a marked squad car pull behind the Mercedes. Jones stopped his Yukon directly in front of the Mercedes. As he did so, Marino exited the Yukon with his gun drawn, yelling " 'police, police, hands up.' " From four feet away, Marino observed defendant "raise up a large, dark-colored handgun," which had "a laser sight." Marino fired one round into the lower portion of the Mercedes's windshield. As he attempted to get some "cover," Marino fired a second round. Winnebago County sheriff's deputies Stan Metzler and Charles Grasley pulled their squad cars into the gas station as Marino exited the Yukon. Grasley activated his emergency lights and dashboard camera. Grasley observed Marino exchange gunfire with defendant. Kaiser testified that Marino shot twice and that a shot came from inside the Mercedes. Metzler also testified that a shot came from inside the Mercedes. Grasley, Kaiser, Metzler, and Jones each fired their weapons into the Mercedes at defendant.

¶ 7    Defendant was taken into custody. He had been shot several times. A white powdery substance, later determined to be 5.5 grams of cocaine, was found in his pocket. A gun was found in the passenger door of the Mercedes. The deputy who recovered the gun described it as a "Glock," with "an extended transparent mag and what appeared to be a laser." The purpose of an "extended mag" is to have "[m]ore usable ammunition without having to reload." The laser allowed for "quicker target acquisition." Two spent cartridge casings were also found in the Mercedes. The parties stipulated that the gun retrieved from the Mercedes was a "Glock 34-nine millimeter Lugar semiautomatic pistol," that the recovered cartridge casings were "two Winchester nine millimeter Luger cartridge cases were fired from the Glock 34."

¶ 8    Rockford police detective David Paterson testified that he interviewed defendant while he was in custody. Defendant stated that he had obtained the gun from the "streets" a few days before

the incident. He stated that he had been shot at a liquor store in Rockford two days earlier and needed the gun for his protection. He did not know that Marino was a police officer when Marino approached him. When he saw a man approach him, he reached down, grabbed his gun, and fired it. He was not looking at the subject when he fired his gun. Defendant admitted to possessing cocaine.

¶ 9     Defendant testified that, two days before the incident, he had been shot at a liquor store in Rockford. Solovic obtained the gun for defendant because he "needed a weapon to defend [his] life." The first time he saw the gun was when he entered the Mercedes. When Solovic pulled up to the gas pump at the gas station, defendant was "looking down." A car pulled up "out of nowhere" and "a man jump[ed] out [of] the back seat with a gun in hand." Defendant did not hear anyone identify themselves as police or see flashing lights. Defendant "panicked." All he saw was "[a] man with a gun." When he saw the man, who was wearing "[r]egular clothes," "rushing [him] with a gun," he picked up the gun off the floor. He "ducked down and *** fired a shot." Defendant did not know what direction the gun was facing when he fired it. He had never fired that gun before. He admitted to possessing cocaine.

¶ 10     The parties stipulated "[t]hat defendant has two qualifying prior convictions in Winnebago County Case Numbers 12-CF-539 and 13-CF-500 for the charge of [AHC]." (Case No. 12-CF-539 was a conviction of aggravated unlawful use of a weapon (AUUW). Case No. 13-CF-500 was a conviction of unlawful possession of a weapon by a felon (UPWF)).

¶ 11     The jury was instructed on self-defense as to the charges of attempted murder and aggravated discharge of a firearm, as follows:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another."

¶ 12    The jury found defendant guilty of AHC and UPCS and not guilty of attempted first-degree murder and aggravated discharge of a firearm.

¶ 13    A sentencing hearing took place on November 5, 2020. The State argued for the maximum 30-year sentence on the AHC conviction, emphasizing defendant's criminal history, and for the maximum sentence of six years on the UPCS conviction. The State argued that defendant was "an individual who chose to pursue his path of criminality," that he was "a danger to the community," and that he demonstrated "a very remote chance of rehabilitation." The State argued that the two "biggest factors," were that his criminal conduct was the result of circumstances likely to recur and that his character and attitude indicated that he would commit another crime. The State further argued: "You saw the gun in court. You saw the gun that this defendant had. This is not—I mean, this was—the only reason you have a gun like that—that was not a gun of self-defense. That was a gun to murder."

¶ 14    Defense counsel argued for a ten-year sentence on the AHC conviction. Counsel emphasized that at the time of the incident, defendant "was in fear of his life." Counsel asked the trial court to consider defendant's unstable home life, his drug and alcohol use, the community he grew up in, and the gang culture to which he was exposed. Counsel argued that defendant acted under a strong provocation to possess a firearm, *i.e.*, because he had previously been shot. He

argued that defendant did not know that the individuals were police officers; he thought they were going to kill him. He also argued that defendant "never discharged a firearm until the date of this offense." Counsel argued that this was not the type of circumstance that warranted the maximum sentence. Counsel stated:

"Actually a sentence for armed habitual, Your Honor, is for someone who is basically out there, I'd say, gun running, Your Honor, shooting, consistently over a period of time.

There has also been gaps—when you say the criminality—in terms of even these possession of firearm charges, which puts him at the level of armed habitual criminal, Your Honor.

And so we ask the Court to—there has been periods of four years, five years at a time where there has been nothing major involving [defendant], uh, albeit that [the State] paints [defendant] as a drug dealer. That's not the factual circumstance of what he is charged with, and it's a simple possession charge, Your Honor, which is one to six.

Obviously that one to six years would be incorporated into the armed habitual criminal sentence; so that's why I'm focusing on that. Thank you."

¶ 15    The trial court sentenced defendant to 27 years on the AHC conviction and to a concurrent five-year sentence on the UPCS conviction. In sentencing defendant, the court noted that it had considered, among other things, the presentence investigation report (PSI), which it had read three times. In commenting on the PSI, the court stated: "[Y]ou have a history of criminal activity." The court then methodically laid out defendant's history, beginning with traffic offenses in 2009 and 2010, and moving on to his March 2011 conviction of aggravated battery on a public way (ABPW), a Class 3 felony for which he received 30 months' probation. The court noted additional traffic offenses and then stated:

"Then we have [AUUW]. The date of the sentence was April 23 of 2012, 30 months['] probation. You had possession of a weapon. You had been charged with that Class 4 felony, because you had been convicted of a felony in the past."

While on probation for ABPW and AUUW, defendant committed UPWF, "which indicate[d] to [the court] that [defendant] did not take this serious." As a result of the UPWF offense, defendant's probation was terminated unsuccessfully. The court further commented:

"I would have thought that after you were placed on probation for the Class 4 felony, [AUUW], that you would have learned your lesson and, No. 1, comply with the terms and conditions of [p]robation and not pick up a weapons violation. But here again, the [UPWF] on September 25th of 2013."

The court then said:

"So there was no gap in time here where you were placed on probation for the felony, you completed that probation, picked up a UUW, a Class 4, and then completed that and then picked up—so you picked them up knowing when you were on probation for felony offenses and then [AUUW]; that you possessed a weapon for a second time."

¶ 16    The trial court also commented on defendant's claim that he had obtained the gun involved in this case because he had previously been shot:

"That's not a defense for possessing of that weapon, and it had a laser scope on it.

You had the opportunity to leave Rockford if you wanted to after the first time you were shot, the second or the third, but you remained here.

The decision to possess a weapon on that date of October 24th was a mistake, a bad mistake for you, sir."

The court proceeded to "look at the facts in the case," and commented:

"Officers pulled up before you, and I understand they weren't in uniform and they weren't in a marked car, and you had been shot a few days before.

But this never would have happened if you didn't have that weapon. You would have been taken into custody without any consequences, but you had the weapon on your person.

And the seriousness of the offense is reflected by the nature of the penalty. Now, because of your prior record, [AHC], a Class X, six to 30 years with 85 percent service on that.

And I recall the facts, the officers. You discharged that weapon.

Regardless of whether or not you felt and thought that the persons who were in front of you were officers or not, if you didn't have that weapon it would have never happened. And you discharged the weapon. You didn't just possess it; you discharged it. You discharged it in an area outside of that car.

Other people—regardless of the police officers involved, regardless of that, this is a place where everybody pulls up to get gas, people in the gas station.

*** Other private citizens were there, not just the officers.

So you fire a shot up in the air somewhere. Someone else could have got hit. *** The discharge of that weapon at the gas station where others were present is a dangerous and serious thing for you to do.

As we see, not the first, not the second, but the third time that you possess a weapon. Now you're before the Court on the offense of [AHC]."

The court again reviewed defendant's past weapons offenses as well as his comments in the PSI as to those offenses.

¶ 17    In imposing the 27-year sentence, the trial court stated, among other things, that it believed the sentence was "necessary to deter others from committing the same offense, possession of a weapon by persons who are not entitled to possess a weapon, a serious, serious matter" that defendant's "criminal conduct [was] a result of circumstances likely to reoccur," and that defendant's "character and attitude indicate[d] *** that [he was] likely to commit another offense." The court made no specific comments as to its basis for imposing the five-year sentence on the UPCS conviction.

¶ 18    Defendant filed a motion for reconsideration of his sentence, arguing that it was excessive. At the hearing on the motion, defense counsel conceded that his five-year sentence for UPCS was reasonable. However, counsel argued that the 27-year sentence for AHC was excessive given, among other things, that defendant's prior record was "not extensive." This prompted the trial court to ask, "What argument do you make regarding this [*sic*] prior two convictions for weapons violations?" Counsel argued that those "are possession alone, not shooting, not even robbing people with a firearm. *** It's him simply being a felon having a weapon."

¶ 19    The trial court denied the motion, and this timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    Defendant contends that the trial court (1) erred in sentencing him on the AHC conviction, because it (a) weighed, in aggravation, factors inherent in the offense and (b) considered unreliable evidence of acquitted conduct; and (2) erred in imposing an extended-term sentence on the UPCS conviction, because it was not the highest-class felony of which he was convicted.

¶ 22    Defendant concedes that he did not properly preserve these claims. See 730 ILCS 5/5-4.5-50(d) (West 2018) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within

30 days following the imposition of sentence."); *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required.").

¶ 23 Nevertheless, defendant asks this court to consider his claims under the plain-error rule. "Plain error is a limited and narrow exception to the general forfeiture rule." *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 17. To obtain relief under the plain-error rule, a defendant must first show "a clear or obvious error." *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* Under either prong, the defendant has the burden of persuasion. *Id.* "We begin a plain-error analysis by determining if there was reversible error in the first instance, as '[a]bsent reversible error, there can be no plain error.' " *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 38 (quoting *People v. Cosby*, 231 Ill. 2d 262, 273 (2008)).

¶ 24 A. Sentencing on the AHC Conviction

¶ 25 1. Reliance on Factors Inherent in the Offense

¶ 26 Defendant first contends that, in sentencing him on the AHC conviction, the trial court improperly considered in aggravation defendant's prior convictions of UPWF and AUUW as well as the "mere fact" that defendant possessed a firearm, which are elements of the AHC offense.

¶ 27 Section 24-1.7(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.7(a) (West 2018)) provides, in pertinent part, as follows:

> (a) A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony ***;

(2) unlawful use of a weapon by a felon ***; or

(3) any violation of the Illinois Controlled Substances Act *** that is punishable as a Class 3 felony or higher."

Here, defendant's AHC conviction was based on defendant's prior offense of AUUW, which is a forcible felony (see 720 ILCS 5/2-8 (West 2018)), and his prior offense of UPWF. According to defendant, because those convictions were elements of the offense of AHC, the court's consideration of them in aggravation was an improper double enhancement.

¶ 28    "The Illinois Constitution requires a trial court to impose a sentence that achieves a balance between the seriousness of the offense and the defendant's rehabilitative potential." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. The court must consider aggravating and mitigating factors including " 'the nature and circumstances of the crime, the defendant's conduct in the commission of the crime, and the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education.' " *Id.* (quoting *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992)). "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. [Citation.] Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' [Citation.]" *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). Using the same factor twice to elevate the severity of the offense is referred to as a "double enhancement." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005); *Phelps*, 211 Ill. 2d at 12. For instance, in *People v. Hobbs*, 86 Ill. 2d 242 (1981), the supreme court held that the same 1979 prior felony theft conviction that was used as an element of the offense of felony theft could not also be used to impose an extended-

term sentence. We review *de novo* the question of whether the trial court considered an improper double enhancement. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 19.

¶ 29    We reject defendant's argument that he was subject to an improper double enhancement. In *People v. Thomas*, 171 Ill. 2d 207, 224-25 (1996), our supreme court held that consideration of a defendant's criminal history in fashioning a sentence within the applicable statutory range does not count as an "enhancement" in the sense prohibited by the rule. There, the defendant was convicted of a Class 1 felony, but because he had two prior Class 2 felony convictions, he was subject to a mandatory Class X term, within the range of 6-30 years. *Id.* at 210. In sentencing the defendant to 15 years, the trial court expressly considered the defendant's criminal history as a statutory aggravating factor. *Id.* at 210, 225. On appeal, the defendant argued that his criminal history had already been used to enhance his offense from a Class 1 to a Class X and that, therefore, to consider his criminal history again in sentencing him above the Class X minimum was a double enhancement. The supreme court disagreed that simply considering a defendant's criminal history as an aggravating factor "constitute[d] an enhancement." *Id.* at 229. The supreme court explained that a trial court has a "constitutionally mandated duty to assess [a] defendant's rehabilitative potential" and to fashion a sentence "tailored to the needs of society and the defendant, within the available parameters." *Id.* at 224-25, 229. The supreme court held that, because the trial court must be allowed to consider a defendant's entire criminal history for this purpose, the trial court had properly exercised its discretion when it " 'reconsidered' [the] defendant's two prior convictions" that were used to qualify him for a Class X sentence. *Id.* at 229. The court distinguished *Hobbs*, noting that its holding "was limited to situations where the same prior conviction is used both to enhance the class of an offense and to enhance the punishment for that offense." *Id.* at 226.

¶ 30    Subsequently, in *Brown*, the First District considered whether the trial court, in sentencing the defendant for being an AHC, relied on an improper sentencing factor when it considered the defendant's prior UUWF conviction as an aggravating factor, even though the conviction served as a predicate offense for AHC. *Brown*, 2018 IL App (1st) 160924, ¶ 19. Relying on *Thomas*, the *Brown* court held:

> "Although *Thomas* concerned the mandatory Class X sentencing statute rather than the Class X AHC offense, we find the court's reasoning applicable. Thus, although [the defendant's] prior UUWF conviction was used as a predicate offense for the AHC conviction, the trial court could properly consider the UUWF conviction as part of [the defendant's] criminal history. [Citation.] To paraphrase *Thomas*, while the *fact* of [the defendant's] prior UUWF conviction determined his eligibility for an AHC charge, it is the *nature and circumstances* of that conviction which, along with other factors in aggravation and mitigation, determined the exact length of his sentence. [Citation.] Thus, in order to properly consider [the defendant's] criminal history, the court had to consider his prior UUWF conviction." (Emphases in original). *Id.* ¶ 21.

¶ 31    Here, based on *Thomas* and *Brown*, though defendant's prior convictions of UPWF and AUUW were predicate offenses for the AHC conviction, the trial court could consider them in the context of defendant's criminal history. The record establishes such use here. Defendant, however, cites the following comments as error:

> "Then we have [AUUW]. The date of the sentence was April 23 of 2012, 30 months['] probation. You had possession of a weapon. You had been charged with that Class 4 felony, because you had been convicted of a felony in the past.
>
> * * *

- 13 -

I would have thought that after you were placed on probation for the Class 4 felony, [AUUW], that you would have learned your lesson and, No. 1, comply with the terms and conditions of Probation and not pick up a weapons violation. But here again, the [UPWF] on September 25th of 2013."

* * *

As we see, not the first, not the second, but the third time that you possessed a weapon. Now you're before the Court on the offense of [AHC]."

Defendant also points to the following question, posed by the trial court at the hearing on his motion for reconsideration of his sentence: "What argument do you make regarding this [*sic*] prior two convictions for weapons violations?"

¶ 32    However, when looked at in context, the complained-of comments were made during the trial court's overall discussion of defendant's criminal history, as set out in the PSI, which the court properly considered in fashioning an appropriate sentence within the statutory range. The court specifically noted the prior convictions in its discussion of the timeline of defendant's "history of criminal activity." Indeed, one challenged remark was made in direct response to defense counsel's argument that there had "been gaps" in defendant's criminal history. The court's comments on defendant's prior convictions reflected on defendant's rehabilitative potential and were a proper sentencing consideration. As to the court's question posed during the hearing on the motion for reconsideration, it is clear that the court was responding to and refuting defense counsel's argument that defendant's prior record was "not extensive." Thus, as in *Thomas*, the court " 'reconsidered' defendant's two prior convictions, as part of defendant's entire criminal history, in performing its constitutionally mandated duty to assess defendant's rehabilitative

potential in order to fashion an appropriate sentence." *Thomas*, 171 Ill. 2d at 229. "This exercise of judicial discretion was entirely proper and does not constitute an enhancement." *Id.*

¶ 33 We also find no error in the trial court's comments regarding the fact that defendant possessed a weapon. Defendant points to the court's statements that "[t]he decision to possess a weapon on that date *** was a mistake," that "this would have never happened if you didn't have that weapon," and then again that "if you didn't have that weapon it would have never happened." Defendant argues that "[t]hese comments dwelled on the mere fact of possession." We disagree. Contrary to defendant's assertion, the court did not "dwell[ ]" on the fact of possession. Instead, these brief comments, reviewed in context, show that they were made when the court was commenting on the overall facts of the case. Indeed, the court specifically noted that "the seriousness of the offense is reflected by the nature of the penalty." Accordingly, we find no error.

¶ 34 2. Consideration of Evidence that Defendant Discharged His Weapon

¶ 35 Defendant next contends that the trial court erred in considering evidence of acquitted conduct, *i.e.*, evidence that defendant discharged a firearm, which was "deemed unreliable by the jury." According to defendant, the court considered "unreliable evidence that [defendant] was responsible for the exchange of gunshots during the incident, despite the fact that the jury had acquitted him of all offenses involving the discharge of a firearm."

¶ 36 As defendant acknowledges, a trial court may consider evidence of criminal conduct even if the defendant had previously been acquitted of that conduct, so long as the evidence presented is relevant and reliable. *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL App (1st) 093547-B, ¶¶ 134-135; see also *People v. Deleon*, 227 Ill. 2d 322, 340 (2008). For "evidence to be admissible in a sentencing hearing, it is required only to be reliable and relevant, a determination that is within the trial court's discretion." *People v. Rose*, 384 Ill. App. 3d 937, 941 (2008).

¶ 37     Here, the trial court stated:

"And you discharged the weapon. You didn't just possess it; you discharged it. You discharged it in an area outside of that car.

Other people—regardless of the police officers involved, regardless of that, this is a place where everybody pulls up to get gas, people in the gas station.

One man testified that he had pulled up near the location where the shooting occurred, the firing of your weapon and the officer's weapon. He was in that area too. Other private citizens were there, not just the officers.

So you fire a shot up in the air somewhere. Someone else could have got hit. You placed other persons I believe who were present in that area, other than the officers—I'm not talking about the officers. The discharge of that weapon at the gas station where others were present is a dangerous and serious thing for you to do."

¶ 38     Defendant argues that, "because the jury acquitted [defendant] of all offenses relating to the discharge of the firearm, the jury implicitly found the evidence indicating that [defendant] did not act in self defense unreliable. If the jury found this evidence to be 'reliable,' then they would have convicted [defendant] of the offenses relating to the discharge of the firearm." However, that is not necessarily true. The jury could have reasonably concluded that the State proved that defendant was not justified in using the force used, but that it nevertheless failed to prove that defendant knowingly discharged the weapon "*in the direction of*" a person or a person known to be a peace officer. (Emphasis added.) See 720 ILCS 5/24-1.2(a)(2), (a)(3) (West 2018)). Indeed, the evidence strongly supports that conclusion. In any event, we need not speculate on the jury's deliberations. The fact that the jury did not find defendant guilty beyond a reasonable doubt of aggravated discharge of a firearm does not mean that the evidence is unreliable for sentencing

purposes. See *Rose*, 384 Ill. App. 3d at 941 ("[A] finding of not guilty is not a conclusive finding that the defendant did not commit the crime, but rather means that the State was unable to offer proof beyond a reasonable doubt that he did.")

¶ 39　Here, the evidence that defendant discharged the weapon was reliable and relevant. The evidence established that defendant was seen in the Mercedes holding a firearm and that shots were fired from inside the Mercedes. The parties stipulated that a "Glock 34-nine millimeter Lugar semiautomatic pistol" and "two Winchester nine millimeter Luger cartridge cases" were recovered from the Mercedes and that the "cartridge cases were fired from the Glock 34." Indeed, in addition to Paterson's testimony that defendant told him that he fired the weapon, defendant also testified that he fired the weapon. Accordingly, because the evidence that defendant discharged the weapon was relevant and reliable, we find no error in the trial court's reliance on it.

¶ 40　　　　　　　　　　B. Sentencing on the UPCS Conviction

¶ 41　Defendant next contends that the trial court erred in imposing a five-year extended-term sentence on his UPCS conviction. As noted, defendant failed to preserve this claim and asks this court to consider it under the plain-error rule. Under the plain-error rule, we must first consider whether there was "reversible error." *Camacho*, 2018 IL App (2d) 160350, ¶ 38.

¶ 42　Our supreme court has held that, under section 5-8-2(a) of the Unified Code of Corrections (730 ILCS 5/5-8-2(a) (West 2018)), a defendant convicted of multiple offenses may be sentenced to an extended-term sentence for only the most serious class of offenses. *People v. Bell*, 196 Ill. 2d 343, 350 (2001); *People v. Jordan*, 103 Ill. 2d 192, 205-06 (1984). However, an extended-term sentence "may be imposed 'on separately charged, differing class offenses that arise from *unrelated courses of conduct*.' " (Emphasis in original.) *Bell*, 196 Ill. 2d at 350 (quoting *People v. Coleman*, 166 Ill. 2d at 257, 209 (1995)). In determining whether the offenses were part of

unrelated courses of conduct, the court must consider "whether there was a substantial change in the nature of the defendant's criminal objective." *Bell*, 196 Ill. 2d at 354. If so, then the offenses were part of an " 'unrelated course of conduct' " and an extended-term sentence may be imposed on differing class offenses. *Id.*

¶ 43    As to our standard of review, defendant argues that, under *People v. Thompson*, 209 Ill. 2d 19, 23-24 (2004), we should review the issue *de novo*. The State makes no argument in response. In any event, we disagree with defendant that our standard of review is *de novo*. The issue in *Thompson* was different from the issue here. *Thompson* involved an analysis as to whether the defendant's extended-term sentence was void or voidable under the now-abolished void sentencing rule. Thus, it provides no guidance. Instead, we find instructive *People v. Robinson*, 2015 IL App (1st) 130837. There, the First District found that " '[t]he determination of whether a defendant's actions constitute a single course of conduct' or is part of an unrelated course of conduct 'is a question of fact for the trial court to determine, and a reviewing court will defer to the trial court's conclusion unless that conclusion is against the manifest weight of the evidence.' " *Robinson*, 2015 IL App (1st) 130837, ¶ 102 (citing *People v. Hummel*, 352 Ill. App. 3d 269, 271 (2004)).

¶ 44    Here, defendant's UPCS conviction, which is a Class 4 felony (see 720 ILCS 570/402(c) (West 2018)), was a less serious offense than the AHC conviction, which is a Class X felony (see 720 ILCS 5/24-1.7(b) (West 2018)). Therefore, the trial court could only impose an extended-term sentence for the UPCS conviction if it was separately charged from the AHC conviction and arose from an unrelated course of conduct. See *Bell*, 196 Ill. 2d at 350. In imposing the extended-term sentence of five years, the trial court did not explain its reasoning or reference the applicable code provisions. However, we presume that the trial court was aware of the law and reasoned that the UPCS conviction arose from an unrelated course of conduct. See *Robinson*, 2015 IL App (1st)

130837, ¶ 103 ("[T]here is a presumption that a trial court knows the law and applies it."); *People v. Majer*, 131 Ill. App. 3d 80, 83 (1985) ("Because a court of review cannot presume the existence of an error that the record does not demonstrate affirmatively, it must resolve silence in the record against the defendant."). Thus, under *Robinson*, we consider whether the trial court's decision was against the manifest weight of the evidence. *Robinson*, 2015 IL App (1st) 130837, ¶ 102. It was not.

¶ 45    The evidence established that defendant's criminal objective in committing the AHC offense, *i.e.*, in possessing the firearm, was to protect himself because he had been shot two days before. Paterson testified that defendant told him he had been shot at a liquor store in Rockford two days earlier and needed the gun for protection. Defendant testified that Solovic obtained the gun for him so that he could "defend [his] life." The testimony as to the UPCS offense established only that 5.5 grams of cocaine were recovered from defendant's pocket during a search after he was taken into custody for exchanging gunfire with plain-clothes deputies. Defendant admitted to Paterson and at trial that he possessed the cocaine. There was no testimony linking defendant's possession of 5.5 grams of cocaine to his possession of the firearm and his stated objective of "defend[ing] [his] life." The trial court could have reasonably concluded that the two offenses arose from unrelated courses of conduct. We therefore cannot conclude that the court erred in imposing an extended-term sentence on the UPCS conviction.

¶ 46                                  III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 48    Affirmed.